## Case No. 12,470a.

### SCHNEIDER v. THILL

[5 Ban. & A. 565.][1]

Circuit Court, E. D. New York. July, 1880.

PATENTS—LAMP SHADES—SPECIFICATIONS—PUBLIC USE.

1. The claim of the patent being, "In a lamp having a burner, the combination of a shade holder made of material that will admit of the passage of light, and a shade or globe, arranged and constructed substantially as described, whereby the burner performs the required functions without the use of a chimney, as set forth," and no description whatever of the shade to be used being given, either in the claim or the specification, and it appearing that one well-known form of lamp shade would not, if used in the combination, produce the result claimed, and that the state of the art limited the complainant's patent to the method shown by him of combining certain forms of shade, shade holder, and burner, in such a manner as to enable the chimney to be dispensed with, *held*, that the patent did not describe the invention in the full, clear, and exact terms required by the statute, and was therefore void.

2. Eight years before applying for a patent, the inventor voluntarily, and for a consideration, made and sold, without reserve, a device embodying his invention to a third party; intending the same to be publicly used by him, and it was so used. *Held*, that these facts show a public use which invalidates the patent.

[This was a bill in equity by Bennett B. Schneider against Francis Thill, for the infringement of certain letters patent.]

George Gifford and C. H. Watson, for complainant.

Edwin H. Brown, for defendant.

1 [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

BENEDICT, District Judge. This action is brought to recover damages for the infringement of four several patents owned by the plaintiff. One of these patents is re-issue No. 7,511, granted February 13, 1877, to the plaintiff, as assignee of Carl Votti, for an improvement in shade holders in lamps. The invention sought to be secured by this patent is described by the plaintiff's expert to be "a novel arrangement of shade and shade holder, which, combined as shown in the drawing, operate to produce, when placed upon a burner, the draft necessary to supply air to the flame issuing from the burner." The first claim of the patent, which is the only claim here involved, is as follows: "In a lamp having a burner, the combination of a shade holder made of material that will admit of the passage of light, and a shade or globe, arranged and constructed substantially as described, whereby the burner performs the required functions without the use of a chimney, as set forth." This claim is for a combination composed of three elements, a lamp burner, a shade holder, and a shade. The claim contains a partial description of the shade holder, but, by the words, "arranged and constructed substantially as described," refers to the specification and drawing for the form of the other elements, and a complete description of the form of the shade holder, as well as for the method in which the shade, shade holder, and lamp burner are to be arranged to produce the desired result. In the specification, the lamp burner is described as "an ordinary lamp burner, provided with a circumferential flange for the support of the cone, and which ordinarily also serves to support the chimney or cylinder. This flange is provided with suitable perforations, through which air is admitted both inside and outside the cone." The lamp burner thus described is not claimed to be new. The specification also describes the shade holder as made of glass or other suitable transparent material, or of material that will allow of the passage of light, and which is provided with a tubular extension or socket which fits over the cone, leaving an air space between its inner surface and the outer surface of the cone. From said socket extends a broad disk-shaped flange, which is provided with a rim, which serves to support and retain the shade. The flange is perfectly closed, so that no air will pass to the flame except what is admitted through the perforations in the burner flange. No description whatever of the shade is given, either in the claim or in the specification. It is not pretended that Votti was the first to employ a lamp shade or a lamp burner, and the evidence shows that shade holders constructed as described were not original with him. Indeed, the testimony of the plaintiff's expert is to the effect that novelty in the form of the shade holder used forms no part of the invention secured by the patent, and that the patent is for the combination described, and not for any of the elements that go to form that

combination. The patentable feature of this invention must, therefore, be in the method of arranging the lamp burner, shade holder, and shade. The only arrangement of these parts that can be gathered from the claim, specification, and drawing is, that the shade holder is to be placed on the flange of the burner, which ordinarily serves to support the chimney or cylinder, and the shade upon the broad disk-shaped flange of the shade holder. In this mode of arranging a shade, shade holder, and lamp burner, it certainly is not easy to discover any novelty of invention sufficient to support a patent. Such an arrangement of the parts of a lamp referred to would seem to be nothing more than the ordinary and well-known method of arranging those parts of a lamp.

But, it is said, before Votti, these parts of a lamp were always used in connection with a tall cylinder surrounding the frame, ordinarily termed, when speaking of lamps, the chimney. Votti was the first to discover and announce that the chimney could be omitted, and still sufficient air furnished to the flame issuing from the burner to produce the required light, and, having put this discovery to a practical test, he became entitled to the exclusive right to the combination employed by him to accomplish the result indicated. Assuming the correctness of this contention, as to which no opinion need be expressed at this time, it is evident that, if Votti discovered anything of value, it was the method of combining certain forms of shade, shade holder, and burner in such a manner as to enable the chimney to be dispensed with. Votti did not discover that a shade, shade holder, and burner could be combined in a lamp. That was known before him. Nor did he discover that a lamp burner such as he describes, combined with a shade holder such as he describes, and a shade of any form or description, could be so arranged as to dispense with the use of the chimney; for such is not the fact. Lamp shades vary in form and in description. A not uncommon form has perpendicular sides, and is wholly uncovered at the top. Such a shade, combined with the shade holder and lamp burner described in the Votti patent, in the manner there described, will not produce the draft necessary to supply sufficient air to the flame issuing from the burner. Such a combination would, in all respects, comply with the description given in the Votti patent, and yet would utterly fail to accomplish the result claimed for the Votti invention. The statement of the patent, that "it will be seen that, with the shade and shade holder arranged as shown and described, the ordinary burner will perform the required functions without the use of a chimney," is therefore incorrect. That result will not be seen unless a shade having certain peculiarities of form be used. What those peculiarities are the patent omits to disclose, and the omission is fatal to its validity. If it were the fact that the result claimed to have been first at-

tained by Votti could be secured by using any form of shade in combination with the burner and shade holder that he describes, the difficulty indicated would not exist. But, as is obvious, in order to produce the desired result, it is necessary to know the form of the shade; and yet the patent, instead of stating that the form of the shade is important, and giving information as to the form and description of the shade that is to be used, states nothing in regard to the shade, and leaves it to be inferred that a shade of any form or description may be employed. It is impossible to say, of such a patent for such an invention, that it contains a description of the invention in such full, clear, and exact terms as to enable any person skilled in the art to which it appertains to make and use the same. It would doubtless occur, to any one skilled in the art of constructing lamps who should undertake to employ the combination described in the Votti patent, that the burner would not perform the required functions unless some attention was paid to the character of the shade, the location and size of its aperture, and the relation in size between the aperture in the shade and the aperture below the flame; but, in all these particulars, experiment, not to say invention, would be necessary before he could arrange a shade, shade holder, and lamp burner that would enable the burner to perform its functions without the use of a chimney.

If it be said that the claim and also the specification use the words "shade or globe," and thereby indicate that the shade must be globular in form, the answer is that, when the patent says that a "shade or globe" may be used, the natural meaning is that a globe or any other form of shade may be used. Nor will it do to say that the word "globe," as used in this re-issue, has the effect to limit the word "shade," to shades of a globular form, because, in the original patent, the word "globe" nowhere appears, and there is no language therein that can serve to indicate the form of shade necessary to be employed in order to accomplish the desired result, or to suggest that the form of the shade is of any importance; so that, if the word "globe," inserted in the re-issue, were to be considered as limiting the word "shade" to shades of a globular form, the re-issue would become subject to the objection that it covers a combination not described or attempted to be described in the original patent, and consequently is void. I conclude, therefore, that the Votti patent is invalid, because it does not contain that full, clear, and exact description of the invention which the law requires.

This view of the Votti patent renders it unnecessary to consider the various objections to the plaintiff's claim, based on that patent, that have been pressed upon my attention by the defendant, and I pass to consider that part of the plaintiff's claim which is based upon the patents Nos. 191,102, 191,103 and 191,224. These patents were granted to the

plaintiff as assignee of Homer Brooke. .Patent No. 191,102 is for a compound mold for the manufacture of lamp shades. Patent 191,-103 is for a compound mold for the manufacture of lamp shades. Patent No. 191,224 is for an improvement in the process of manufacturing shades. The first two of these patents are for machines intended to be used when employing the process described in the last-mentioned patent.

To these patents the defense has been interposed that the inventions described therein were in public use and on sale for two years and more prior to the application of Brooke for a patent. This defense I find sustained by the testimony. It appears in evidence that, in the fall of 1869, Brooke, the inventor, made a mold which, he says, embodies the invention described in his mold patents Nos. 191,102 and 191,103, and was intended to be used in making shades according to the process described in patent No. 191,224. This mold Brooke, the inventor, made for a Mr. T. T. Nichols, the agent of the Boston & Sandwich Glass Company. Nichols ordered the machine of Brooke, paid Brooke for it when delivered, and now owns the same. This mold was sent by Brooke to Nichols, at Sandwich, Mass., and it was there publicly used in a well-known factory, in the summer of 1869, in manufacturing shades according to the process described in the patent No. 191,-224. There is no evidence tending to show that any limit was put upon the use of this machine by Brooke, when he sold it or thereafter. He gave Nichols a bill of sale which contained nothing to indicate that the transaction was not what it appeared upon its face to have been, viz. an absolute sale of the machine, without any reservation whatever, with the intention that it should be used by the buyer. So far as appears, Brooke paid no further attention to the mold or the process referred to until the fall of 1876, when he made a similar mold for B. B. Schneider, the plaintiff in this suit, and, in January, 1877, made application for a patent. Brooke now says that he sent the machine to Sandwich for trial; but he is not confirmed in this statement by Nichols, who ordered the machine, nor are any facts attending the sale or use of the machine proved that correspond with his present statement. Upon the evidence as it stands, it is impossible to say that Brooke was simply testing his invention during the long period that elapsed between the time of the alleged invention in 1869 and the application for a patent in 1877. On the contrary, it must be held that, nearly eight years before applying for a patent, the inventor voluntarily, and for a consideration, made a mold embodying the inventions described in patents Nos. 191,102 and 191,103, intending the same to be publicly used in making shades according to the process described in patent No. 191,224, and that he sold the same, without reserve, to a third party, who bought it for use, and actually made public use of it according to the process described in patent No. 191,224, some eight years before any application for a patent was made. My conclusion, therefore, must be that the plaintiff's action, so far as based on the patents Nos. 191,102, 191,103 and 191,224, has failed, because the inventions described in those patents were in public use and on sale more than two years prior to the applications for patents therefor, and the patents are for this reason void.

The bill, accordingly, dismissed, with costs.

[NOTE. An action between the same parties, brought to establish the validity of re-issued letters patent No. 7,511, and also of letters patent No. 191,224, will be found reported in 3 Fed. 95. For other cases involving this patent, see note to Case No. 12,469.]