## SCHNEIDER *v.* POUNTNEY.

(*Circuit Court, D. New Jersey.* August 30, 1884.)

PATENTS FOR INVENTION--REISSUE No. 10,087--SHADE-HOLDER FOR LAMP--INFRINGEMENT OF COMBINATION--USE OF PART ONLY--INTENTION OF INFRINGER.

Reissued patent No. 10,087, granted April 11, 1882, to Bennett B. Schneider, as assignee of Carl Votti, the original inventor of an "improvement in shade-holders for lamps," in which the shade-holder becomes the base of the chimney, and the shade its top, retaining all their own functions in the lamp, and dispensing with a separate chimney, is a valid patent, and is infringed by the manufacture and sale of the shade-holder without the other part of the invention, in combination with which it is useful, with intent that it shall be used by the purchaser in combination with a chimney to perform the function for which it was invented.

On Bill, etc.

*Livingston Gifford*, (with whom was *A. Q. Keasbey*,) for complainant.

*Wetmore & Jenner*, for defendant.

NIXON, J. On the third of October, 1876, the United States patent-office issued to one Carl Votti, of Newark, New Jersey, letters patent No. 182,973, for "improvements in shade-holders for lamps." The patentee stated in his specifications that his invention consisted in the combination of a shade-holder, made of glass or other transparent material, with the cone of the burner of a lamp,—the two being so constructed as to provide a free access of air outside and inside the cone, in order to produce a brilliant light without the use of a chimney. After a succinct description of the drawings, he states his claim as follows:

"The combination of the shade, C, shade-holder, B, constructed of transparent material, and provided with a downwardly extending socket, c, and dish-shaped flange, d, with the cone, b, having a flange, A, provided with apertures for the admission of air to the outside and inside of the cone; the whole arranged to operate without a chimney, substantially as set forth."

The attention of the complainants, who had been engaged in the lamp and glass business for upwards of 30 years, was called to the invention in the summer or autumn of 1876. He states that one of his customers brought the illuminator, shade and burner to his notice, and from the moment he saw it he considered it a very valuable improvement, and determined to get the possession and control of the patent. He had an interview with the inventor, purchased the sole right to use the invention, and began at once to have a number of moulds made for the manufacture of glass shade-holders, to be used without a chimney, in combination with lamp burners and shades. The success of the sales of the new product was remarkable. From October 9, 1876, to January 9, 1877, the complainant sold 57,228. During the first year (1877) the sales reached 361,416, and there was a gradual increase from year to year until 1882, when the yearly sales had run up to 602,556.

A few months after the original patent was granted, it was surrendered and a reissue obtained, numbered 7,511, and dated February 13, 1877. It stated that the invention consisted in a transparent shade-holder, or holder of a material allowing the passage of light, and shade or globe, so arranged that an ordinary burner could be used without a chimney. The inventor then made three specific claims, as follows: (1) In a lamp having a burner, the combination of a shade-holder made of a material that will admit of the passage of light, and a shade or globe arranged and constructed substantially as described, whereby the burner performs the required functions without the use of a chimney, as set forth; (2) the shade-holder, B, constructed of material that will admit of the passage of light, and provided with a downwardly extended socket, c, and dish-shaped

flange, *d,* with rim, E, in combination with a globe or shade, C, and burner, A, of a lamp, as and for the purposes herein set forth; (3) the combination in a lamp of the burner, A, having perforated flange, *a,* and cone, *b,* the shade-holder, B, with central socket, *c,* and a shade or globe, C, substantially as and for the purposes herein set forth.

The question of the validity of this reissue was first before Judge BENEDICT in the case of *Schneider* v. *Thill,* 5 Ban. & A. 565, and afterwards before Judge BLATCHFORD in *Schneider* v. *Lovell,* 10 FED. REP. 666. Both of these learned judges held the reissue to be invalid, and for substantially the same reason, to-wit, that the specification did not contain the full, clear, and exact description of the invention that the law requires. After these decisions a second reissue was applied for, and secured April 11, 1882, and numbered 10,087. The inventor adds to the drawings of the original patent and the first reissue the drawing of a model which he numbers 3, and which he says corresponds in size, as well as in form and proportions, with the model that was filed with his application for his original letters patent, and further states that the form and proportions of said shade-holder are well adapted for use in carrying out the invention. In this reissue he claims as new: (1) In a lamp, the combination of a kerosene burner with a transparent shade-holder and a shade, the shade-holder being adapted to rest upon the burner in the place adapted for the ordinary chimney, the shade resting on said shade-holder, and being formed so as to converge from its base towards its top, and the shade and shade-holder together constituting the draught-inducing device for the burner, substantially as set forth. (2) The shade-holder, B, constructed of a material that will admit of the passage of light, and provided with a downwardly extending socket, *c,* and dish-shaped flange, *d,* with rim, *e,* in combination with a shade, C, converging from base to top, and the kerosene burner, A, of a lamp, as and for the purpose set forth. (3) The combination in a lamp of the burner, A, having perforated flange, *a,* and cone, *b,* the shade-holder, B, and socket, *c,* and a shade converging from base to top, substantially as and for the purpose herein set forth. (4) The combination of the shade, C, shade-holder, B, constructed of transparent material, and provided with a downwardly extended socket, *c,* and dish-shaped flange, *d,* with the cone, *b,* having a flange, *a,* provided with apertures for the admission of air to the outside and inside of the cone, the whole arranged to operate without a chimney, substantially as specified. Each of these claims is for a combination consisting of various elements, all of which are old, except the form and construction of the shade-holder, which the inventor claims to be new. He further claims that by their combination he has obtained a new mode of operation, or a new and useful result, to-wit, a lamp without a chimney, with a sufficient draught to produce a good light.

The present suit is brought on this reissue, and the first question

arising is whether the alleged defects of the original patent and first reissue have been cured in the second. The counsel for the complainants claim that they have been, and base their judgment mainly upon two facts: (1) That the testimony in this suit clearly reveals the sufficiency of the specifications of the patent to all persons skilled in the art; and (2) that the last reissue has supplied the defects which the learned Judges BENEDICT and BLATCHFORD found in the first reissue. The evidence, which was wanting in the cases before these judges, designates the shade exhibited in the drawings as a student lamp shade or its equivalent, a shade well known in the art as being large at the bottom, thereby admitting of the reflection of the light downward and outward, and contracted at the top, thereby inducing a draught. The form and proportion of such a shade are well known, and its characteristics are thus described in the last reissue:

"It will be observed that the shade, C, which is to fit on the shade-holder, converges from its base towards its top, so as to be large at the base and considerably contracted at the top, whereby the upward-tending rays from the flame may be mostly intercepted by the shade and be reflected downward and outward around the fount of the lamp, while the equilibrium of the shade upon the shade-holder is such that no means of attachment, other than the flange and rim of the shade-holder, is needed to prevent its falling off in ordinary use."

In answer to Judge BLATCHFORD's criticisms of the first reissue, that the proper proportions of the shade-holder were not stated or shown in the drawings, the complainant caused a drawing to be made of the original model on file in the patent-office since the first patent was applied for, and annexed a copy to the last reissue, and then states that the proportions and form there shown are the best for successfully carrying out the invention. I am of the opinion that in the light which he has thrown upon the subject-matter of the patent by the evidence introduced, and in the fuller specifications of the last reissue, he has fairly succeeded in bringing out the true character of the invention, to-wit, a useful device by which the shade-holder becomes the base of the chimney and the shade its top, retaining all their own functions in the lamp, and dispensing with a separate chimney.

The remaining question is one of more difficulty: Does the testimony show that the defendant has infringed any of the claims of the reissue? It is the general law, in regard to combination claims, that all the elements that make up the combination or their equivalents must be used to constitute an infringement. The defendant is a glass manufacturer, and the charge against him is that he has manufactured and sold the transparent glass shade-holder, which is one of the constituents of the complainant's combination, and the only one that is claimed to be novel and that characterizes Votti's invention. As there is nothing in the reissue which claims this shade-holder, except in combination with the other elements, it is

clear that the making and selling of it, standing alone, is not an infringement of any of the claims. See *Saxe* v. *Hammond,* 1 Ban. & A. 632.

But the complainant insists that where there are several tort-feasors, each contributing elements which are intended to be used in combination, they are all liable as infringers, and that a suit may be maintained against all, or each one separately. The allegations of the bill of complaint, as to the infringement of the defendant, are (1) that certain shade-holders, made and sold by the defendant, are only used in Votti's combination, and are not applicable to or useful for any other purpose; and (2) that the defendant knew this fact, and made and sold said shade-holders with the knowledge that they could be used by the purchaser thereof in constructing said patented combination in infringement of said patent, and that he made and sold them for that purpose.

In regard to the first allegation, the complainant's expert, Brevoort, and his agent in patent matters, Hanford, both explicitly state that they know of no other uses to which the shade-holder, made by the defendant and complained of by the complainant, can be applied, except in combination with the other devices of the Votti patent, and that they never heard of their being put to any other use. This testimony stands uncontradicted except by the suggestion of defendant's counsel of possible use to which such shade-holders might be applied. I recollect nothing from the defendant himself or from any of his witnesses which shows, in fact, any other application.

As to the second allegation, referring to the intent of the defendant in his manufacture of the shade-holder, I think it is fairly to be inferred, (1) from the conversation of the defendant with Hanford; (2) from his attempts to get from the complainant an exclusive right to manufacture the shade-holders; (3) from the tenor of the circulars that he prepared and sent out; and (4) from his absolute silence when upon the witness stand, in regard to any other use for which he manufactured them, that his intent in making and selling them was to have them used in combination with the other devices of the complainant's patent.

The law in such cases has been quite definitely settled. The first case to which I would allude is the leading one of *Wallace* v. *Holmes,* 5 Fisher, 37. The patent there was also for an improved lamp, consisting of the combination of several parts. The alleged infringement was for the manufacturing and selling one of the elements of the combination, to-wit, the burner. It was used in combination with a chimney, and the purchasers of the burners were expected to go into the market and procure the chimneys from other manufacturers. Judge WOODRUFF held that the defendants could not protect themselves by invoking the well-settled rule that where a patent is for a combination merely, it is not infringed by one who uses one or more of the parts, but not all, to produce the same results, either by

themselves or by the aid of other devices; but that if one party consented to make the burner, and another party the chimney, and each was sold to be used with the other, the parties must be deemed to be joint infringers of the patent, and that each was liable for all the damages. The learned judge drew the inference of an actual concert between the parties from the nature of the case, and the distinct efforts of the defendants to bring the burner in question into use, which could only be done by adding the chimney. He admitted that he found no proof that the defendants had made an actual prearrangement with any particular person to supply the chimney to be added to the burner; "but," says he, "every sale they make is a proposal to the purchaser to do this, and his purchase is a consent with the defendants that he will do it, or cause it to be done. The defendants are, therefore, active parties to the whole infringement, consenting and acting to that end, manufacturing and selling for that purpose."

The principle of the above case, after careful consideration, was indorsed by this court in *Turrell* v. *Spaeth*, 8 O. G. 986; by Judge SHEPLEY in *Saxe* v. *Hammond*, 1 Ban. & A. 652; by Judge LOWELL in *Bowker* v. *Dows*, 3 Ban. & A. 518; and again by the same learned judge in *Richardson* v. *Noyes*, 10 O. G. 507.

Let a decree be entered for the complainant, with costs.