## STELOS CO., Inc., v. GEARHART.

### No. 2446.

District Court, W. D. Pennsylvania.

Nov. 30, 1930.

Vernon E. Hodges and Henry Gilligan, both of Washington, D. C., for plaintiff.

Edward T. Kelley, of Clearfield, Pa., for defendant.

McVICAR, District Judge.

This is a suit in equity for an injunction and accounting by reason of alleged infringement by defendant of plaintiff's patent No. reissue 16,360. The claims involved are 1 to 5 inclusive, 9, 10, and 23. The defenses are invalidity of claim 23, noninfringement of claims 1 to 5, inclusive, 9 and 10, or invalidity by reason of the prior art if said claims are construed to cover defendant's needles.

The court makes the following findings of fact and conclusions of law.

### Findings of Fact.

1. September 25, 1923, Frank C. Stephens made application to the Commissioner of Patents of the United States for a patent for certain new and useful improvements in a needle and its method of use. December 8, 1925, a patent was issued to Stephens No. 1,564,379. March 23, 1926, said patent was surrendered and an application for its reissue was made. June 8, 1926, the application was granted and reissue patent No. 16,360 was issued. November 25, 1927, the original and reissue patents were assigned to

plaintiff, a corporation, which is a citizen and resident of the state of Delaware.

2. The needle patented is adapted to the repair of runs in knit goods and more particularly of silk hosiery. As stated in the patent: "The needle itself consists of a magnetized hook at one end, curved laterally to a desired degree, off center; a magnetized latch or bridge pivoted in proximity to the hook and in position to open and close the latter with the operation of the needle, said latch or bridge being curved laterally to a degree to cause it to project slightly to one side of the hook when in closed position; the end of the needle opposite the hook terminating in a handle by means of which the needle is manipulated, the needle being notched or recessed at a point opposite the end of the latch or bridge when the latter is open, and a beveled side guard attached at the handle end to the right hand side of the needle and terminating, at its free end, near the hook. The hook and latch are magnetized so that when the ends of said hook and latch are brought together, they repel each other."

3. The claims involved are 1 to 5, inclusive, 9, 10, and 23, which read:

"1. A needle having a hook and a side-guard extending in proximity to said hook.

"2. A needle having a hook and a side-guard adjacent and extending alongside the hook.

"3. A needle including means for receiving a thread, a latch co-operating therewith to confine the thread and adapted to be closed by a looped thread, and means for guarding the latch in its open position to prevent the closing thereof by any other thread except the looped thread.

"4. A needle for repairing runs including a hook, a latch adapted to be closed by a looped thread, and a side-guard adjacent the free end of the latch when open for guarding the latch in its open position to permit the closing thereof by the looped thread and to prevent the closing thereof by any other thread.

"5. A needle having an eye for receiving the thread, and a movable magnetized latch for closing said eye and retaining the thread therein."

"9. A needle having a magnetized hook and a magnetized latch or bridge pivoted in proximity to the hook.

"10. A needle having a hook, a pivoted latch and a side guard extending in proximity to the hook and latch."

"23. An improved method of repairing runs or ravelings in a fabric which consists in stretching the fabric over a suitable holder, inserting a repairing device having a hook and pivoted latch through a loop formed in the run or raveling, continuing this movement on through the fabric while holding the device laterally out of alignment with the run or raveling until the loop has slid back over the end of the latch and beneath the latter, then reversing the movement of the device through the loop, catching the next forward thread in the hook while the loop is being pulled over the latch causing the latch to close over the thread, and the loop to be cast off over the end of the device, the thread caught in the hook thereupon forming a new loop, taking the place of the first described loop, then reinserting the device into the fabric as before, and repeating the operation until the run or raveling has been repaired, and finally fastening the thread."

4. The prior art and the advance made therein by the patent in suit are set forth in the patent itself on page 1, lines 3 to 94, inclusive, which reads:

"In repairing the runs or ravels in knitted goods, other needles have been used, but they are not practical, as the method of use is a tedious one, and trying both to the eyes and patience of the operator. In other methods, the fabric is stretched over the finger tip, making it difficult to insert the hook beneath the thread. This objection is obviated in the present invention by stretching the fabric over a porcelain dish, allowing sufficient depth for the free use of the needle.

"With other needles and their methods of use, the stretching of the fabric over the finger tip makes it difficult to see the separate threads, while with my invention and its method of use a white background is provided, making it possible to see the threads of any fabric, and of any color. It is impractical to use other needles with my method.

"With other needles used for a similar purpose, the latch or bridge must be forced open by pressing against the thread or fabric and, in operation, can be opened in no other way. This has a tendency to catch the hook in the fabric or thread, and interfere with the work. The present invention overcomes this objection by reason of its peculiar construction. This, together with its magnetized area compels the latch to fly open at the proper time and greatly simplifies the work.

"With other needles and their method of use, one thread holds the latch or bridge closed over the hook, and the thread to be looped must be forced into the hook while the latch

is so closed. This is very unsatisfactory and unless great care is used in the operation, the thread holding the latch closed will slip off of the needle and allow the work to unravel. With my invention and its method of use, the latch reaches for and grasps the thread to be looped, forces it into the hook and the latch is then tightly closed by the loop already on the needle.

"Other needles and their method of use require four separate motions to complete one purpose—two forward and two back. My invention and its method of use requires but one forward and one backward motion to accomplish the same purpose, thereby not only simplifying the work, but saving one-half the time and labor required by other methods.

"With other needles and their method of use it is necessary to insert the hook into the first loop of the fabric to be repaired. This also applies where the partially repaired work has been slipped from the needle. With my invention and its method of use, the hook can be inserted at any point back of the running loop and the fabric run back to the loop that has been picked up. This makes it unnecessary to pick up a certain loop as must be done with other needles.

"With other needles and their method of use, care must be used to see that each separate thread is picked up by the hook. This places a strain on the eyes. With my needle and its method of use this is not necessary, as it is possible to pick up the threads faster than the eye can see the operation and therefore places no strain on the eyes.

"My invention, owing to its construction, is suitable for doing various kinds of fancy work or stitches, when used by my method. Other needles are impractical for this class of work as there is no way by which they can be kept from becoming entangled in the threads or fabric.

"With other needles and their method of use in case of error necessitating going back to a certain point, it is impossible to drop stitches from the needle without releasing it entirely from the work and picking it up again. With my needle and its method of use it is a very easy matter to drop from the hook one stitch at a time and go ahead again without delay."

5. Plaintiff's needle and method have superseded all prior needles and methods for the repair of knitted goods. It has had a large commercial success since the procuring of the patent therefor. A large number of licenses and franchises have been granted.

In 1926, the amount received therefor was approximately $460,000. The invention was used by some of the largest mills in the United States, including the Berkshire Knitting Mills, the largest in the world.

6. The Stephens invention has been patented in the principal countries of the world, including England, France, Germany, Austria, Italy, Spain, and in practically all Southern and Central American countries.

7. The validity of the patent in suit has been sustained by two decisions of the Commissioner of Patents, the United States District Court for the Western Division of the Western District of Missouri, and by the Supreme Court of the District of Columbia. In each of these cases there was a full trial. It has also been sustained by a consent decree made by the United States District Court for the Eastern Division of the Eastern District of Missouri.

8. The defendant, Emory J. Gearhart, trading as Gearhart Runner Knitter Company, is a citizen and resident of the Western District of Pennsylvania, and has his principal office in Clearfield county, Pa. He and his predecessors (who were members of the same family) have been in the business of manufacturing knitting machines since 1890.

9. Defendant, since the procuring of the patent in suit, has manufactured and sold a hand-operated needle adapted to the repair of knitted goods and more particularly of silk hosiery. The defendant's needle has a hook substantially the same as plaintiff's hook; a latch substantially the same as plaintiff's latch; a shank substantially the same as plaintiff's shank; a handle substantially the same as plaintiff's handle; and an arm which is a substantial equivalent of plaintiff's guard and which performs the same function in the same way. The arm is magnetized in defendant's needle, and it in turn magnetizes the latch and hook, causing these parts to perform the same function as in plaintiff's needle in which the latch and hook are directly magnetized. The method employed in making repairs is the same.

Defendant's needle was patented in the United States October 7, 1930, and bears No. 1,777,610.

10. Defendant admits that he was duly notified by plaintiff of his infringement of the patent in suit.

11. The invention in the needle and method of use in the patent in suit was not obvious and involved invention.

12. The patent in suit has not been antici-

pated by the Pogson application or by any of the patents or publications offered in evidence.

### Conclusions of Law.

1. That claims 3, 4, 5, 9, 10, and 23 of the patent in suit are valid.

2. That defendant has infringed claims 3, 4, 5, 9, 10, and 23 of the patent in suit.

3. That defendant was notified by plaintiff, as acknowledged by defendant, of its patent and of defendant's infringement thereof.

4. That plaintiff is entitled to a decree for an injunction and an accounting.

Let a decree be prepared and submitted in accordance with the foregoing findings of fact and conclusions of law.