**STELOS CO., Inc., v. HOSIERY MOTOR-MEND CORPORATION et al.**

District Court, S. D. New York.

March 23, 1932.

Daniel Burke, of New York City (Vernon E. Hodges and Henry Gilligan, both of Washington, D. C., of counsel), for plaintiff.

Julian S. Wooster, of New York City (Julian S. Wooster and Donald Malcolm, both of New York City, of counsel), for defendants Hosiery Motor-Mend Corporation and Kayser Hosiery Motor-Mend Corporation.

Hardy, Stancliffe & Hardy, of New York City (Hugh M. Morris, of Wilmington, Del., Noah A. Stancliffe, of New York City, and Justin L. Fearing, of Wilmington, Del., of counsel), for defendant Julius Kayser & Co.

WOOLSEY, District Judge.

My judgment in this case is that the complaint must be dismissed as to all three defendants, with costs.

I. This is a suit under the patent law by the plaintiff as owner by assignment from Frank C. Stephens of patent reissue No. 16,360, reissued June 8, 1926, for the unexpired term of Stephens' patent United States No. 1,564,379, granted to him on December 8, 1925, as a result of an application filed on September 25, 1923.

The complaint is based on the alleged infringement of claim 23 of said reissue. This is a claim for an improved method of repairing runs or ravelings in a knitted fabric.

This suit was originally brought in February, 1929, against the Hosiery Motor-Mend Corporation which, whilst the case was pending on May 17, 1929, sold some of its assets to the Kayser Hosiery Motor-Mend Corporation. This company did not assume any liabilities of its vendor. Julius Kayser & Co. is named defendant on the theory of corporate identity based on the claim that the Kayser Hosiery Motor-Mend Corporation, although a separate corporation, is actually a branch or department of Julius Kayser & Co.

. The defenses to the plaintiff's claim in its patent aspects are: (1) That the patent is invalid; and (2) that, if it be valid, the defendants do not infringe; and, in its corporate aspects, that there is not any such identity between the two Kayser corporations as would justify the court in disregarding the fact that they are separate entities, and thus holding Julius Kayser & Co. liable in the event of a recovery by the plaintiff.

II. Claim 23 of the reissue No. 16,360 on which this suit is based—broken into paragraphs in order clearly to show the several elements of the plaintiff's method—reads as follows:

"23. An improved method of repairing runs or ravelings in a fabric which consists in

"stretching the fabric over a suitable holder,

"inserting a repairing device having a hook and pivoted latch through a loop formed in the runs or ravelings,

"continuing this movement on through the fabric while holding the device laterally out of alignment with the run or raveling until the loop has slid back over the end of the latch and beneath the latter,

"then reversing the movement of the device through the loop,

"catching the next forward thread in the hook while the loop is being pulled over the latch causing the latch to close over the thread, and the loop to be cast off over the end of the device, the thread caught in the hook thereupon forming a new loop, taking the place of the first described loop,

"then reinserting the device into the fabric as before, and repeating the operation until the run or raveling has been repaired, and finally fastening the thread."

The method which the plaintiff claims is thus taught is the use of an egg cup of pottery or china over which to stretch the fabric and the manipulation of the needle by what

has been described in the argument as a punch method, i. e. up and down through the fabric, whilst the needle is held at a substantial angle therewith—thus following the line of the run until the run is closed.

In his specifications, Stephens says (italics mine):

"In repairing the runs or ravels in knitted goods, other methods have been used, but they are not practical, as the method of use is a tedious one, and trying both to the eyes and patience of the operator. In other words, the fabric is stretched over the finger tip, making it difficult to insert the hook beneath the thread. This objection is obviated in the present invention by stretching the fabric over a porcelain dish allowing sufficient depth for the free use of the needle.

"With other needles and their methods of use, the stretching of the fabric over the finger tip makes it difficult to see the separate threads, while with my invention and its method of use a white background is provided, making it possible to see the threads of any fabric, and of any color. *It is impractical to use other needles with my method.*"

The infringement claimed is by the defendants' use of what they call the "Vanitas" system of mending runs, in which the repair is achieved with a Finch sliding latch needle electrically operated whilst the fabric to be repaired is stretched over a metal holder approximately resembling in form the egg cup of the plaintiff's commercial method.

III. I am pressed by the plaintiff with the fact that claim 23 has been thrice sustained—once by Judge Otis in the Western District of Missouri in the case of Stelos Co., Inc., v. Stark (oral opinion); once by Mr. Justice Stafford in the Supreme Court for the District of Columbia in the case of Stelos Co., Inc., v. Finch Corporation; once by Judge McVicar in the Western District of Pennsylvania in the case of Stelos Co., Inc., v. Emory J. Gearhart, 60 F.(2d) 1006; and that Mr. Justice Stafford's decision was affirmed on appeal by the Court of Appeals for the District of Columbia in Finch Corporation v. Stelos Co., Inc., 60 App. D. C. 25, 46 F.(2d) 606.

In all these cases—even that which was tried in Missouri—the judges seem to have taken the egg cup for granted. That I find myself unable to do.

IV. In the instant case the plaintiff's situation has been ventilated by the defendants here much more thoroughly than by any of the respective defendants in the cases above mentioned.

The defense of a patent against infringement often involves battles on many fronts, and the tactics of one defendant may so differ from that of others as to create an entirely new situation. So it is here.

Apparently the contention was never pressed, or, at least, never strongly pressed, in the previous cases that the egg cup, which is one of the most important elements in the plaintiff's method, was not properly disclosed in the plaintiff's patent.

Patentees belong to a unique class for, apparently, they alone, of all mankind, are expected always to practice only what they preach. Necessarily, therefore, they are required to preach what they intend to practice.

So it is now settled law that the disclosure of a patent must be so clear as to enable an ordinary workman skilled in the art involved to practice the invention without further experiment, for it is only by this full disclosure that the patentee gives the consideration which he owes to the public for the monopoly granted to him by the patent law. Beidler v. U. S., 253 U. S. 447, 453, 40 S. Ct. 564, 64 L. Ed. 1006; Webster Loom Co. v. Higgins, 105 U. S. 580, 588, 589, 26 L. Ed. 1177; Health Products Corporation v. Ex-Lax Manufacturing Company, Inc., 22 F.(2d) 286, 287 (C. C. A. 2); Lockwood v. Faber (C. C.) 27 F. 63; Badische Anilin, etc. v. Levinstein, L. R. 29 Ch. Div. 366, 412–414.

A fortiori, of course, the disclosure must not be so vague as to require the exercise of inventive skill in order to practice the invention in the most approved fashion. Neilson v. Harford, 1 Web. 331; Morgan v. Seaward, 1 Web. 170, 2 Abb. Patent Cases, 262; R. v. Arkwright, 1 Web. 64, 1 Abb. Patent Cases, 29.

The reason for this is that the disclosure of a patent is not addressed to persons of extraordinary skill and imagination but merely to the ordinary workman who is capable of using the amount of skill and intelligence fairly to be expected from him in the practice of his art, whatever that may be. Cf. Plimpton v. Malcolmson, L. R. 3 Ch. Div. 531, 568, 569, per Jessel, M. R.

Furthermore, as Baron Alderson said in Morgan v. Seaward, 1 Web. 170, at 174: "If a patentee is acquainted with any particular mode by which his invention may be most conveniently carried into effect he ought to state it in his specifications."

For example, a class of objects cannot be described as an element of a combination unless every object of that class will answer its purpose as an element thereof. Schneider v. Thill, 21 Fed. Cas. page 716, No. 12,470a, 5 Ban. & A. 565; Turner v. Winter, 1 Web. 77, 1 Abb. Patent Cases, 43.

So, if in a chemical process patent the disclosure uses terms applicable to several substances, only one of which will answer to achieve the result of the process, the disclosure is insufficient. Badische Anilin, etc., v. Levinstein, L. R. 29, Ch. Div. 366, 412–414.

The public is entitled to all the knowledge which the inventor has in regard to his invention, and if a process can be achieved both by an expensive and a cheap element, the patentee must disclose the cheap element as well as the expensive element so that the public may have the same advantage after his monopoly ceases as the patentee had during the monopoly period. Turner v. Winter, 1 Web. 77, 81; Wood v. Zimmer, 1 Web. 82; Savory v. Price, 1 Web. 83; Sturtz v. De la Rue, 1 Web. 83.

I turn now to the present patent. The generic term "dish" is used in the specification in describing the holder over which the fabric should be stretched in order to practice the plaintiff's patent. Cf. Specifications, page 1, lines 11 to 14.

In the method claim 23, however, the patentee merely refers to a "suitable holder," and that seems to me to leave the matter too much at large.

It might have been quite possible for Stephens to have referred to an egg cup as a preferred holder for use in his method of mending runs and have justified reference to it on the ground that it was a species of dish. In doing this he would, I think, have been warranted by the meanings given to the word "dish" in Murray's Oxford English Dictionary and Webster's International Dictionary, for in both "cup" is included among its subsidiary meanings. The most familiar example of this use of "dish" is, of course, "a dish of tea"—often referred to in English literature of the eighteenth and early nineteenth centuries.

But, however this may be, the use of the word "dish" for "cup" is antiquated and almost obsolete, and I am thoroughly satisfied that an egg cup would not have been suggested to any one who read the patent by the use of the words "suitable holder" after the specification of a "porcelain dish."

I am inclined to feel that the use of the punch method of handling the needle at a substantial angle with the plane of the fabric and the use of the egg cup for the stretching and manipulation of the fabric were in a sense the result of the experience of trying to operate the patent in the vague and rudimentary form of its disclosure.

Whether I am right or wrong about this, in any event it is admitted by Stephens in his evidence that the device of the egg cup was the result of considerable experiment. He thinks he worked it out in July or August, 1923, but he was not able to produce a single contemporaneous record of its use ·in the practice of this patent, although he says that he thinks he told his attorney, Mr. Hodges, about it.

Now the application for the original patent, was made on September 5, 1923, and it was Stephens' duty as applicant for a privilege to have included in his application—both in his specification and in his claim—a definite description of the appliance by which his method patent should be practiced.

There is not, however, any hint of the egg cup even in the reissue patent for which application was made on March 23, 1926, upwards of four months after ·the original patent, No. 1,564,379, was granted.

As a result of this, it seems to me that Stephens finds himself in this dilemma: Either he did know the preferred method of practicing his patent and failed to disclose it in his specification or in his method claim, or else his commercial practice, which it is claimed the Vanitas method of the defendants using the Finch needle infringes, is a much changed outgrowth of his patented practice due to experience therewith subsequent to the granting of his patent.

No matter which alternative the plaintiff chooses, it must, for the reasons above given, fail in this case.

I do not believe that from reading the disclosure of the first Stephens patent, United States No. 1,564,379, or its reissue No. 16,-360, the ordinary person who practices the art of repairing runs could possibly have evoked an· egg cup except after a considerable amount of experimentation, and,·consequently, it seems to me that the patent is invalid for want of adequate disclosure.

To me this failure of disclosure is a most obvious reason for dismissing the complaint. In case, however, the Court of Appeals should differ with me on this question, I shall now deal with some of the other defenses.

V. Assuming that I am not correct in my decision as to disclosure, I do not think that in view of the prior art the plaintiff has shown any patentable subject matter.

I think that Pogson's application of September 15, 1921, shows that the material to be mended must have been stretched over something and showed practically the same method of manipulating the needle as the Stephens patent later did.

Furthermore, I think that the Ceska patent, United States 1,337,884, granted April 20, 1920, for an improved darner, a device looking very much like a calabash pipe —which was considered by the Patent Office to be a patentable improvement on the old egg-shaped darners—showed a holder which, with such slight modifications as would be merely the result of a low form of mechanical intelligence, could be changed into the "suitable holder" of Stephens' method claim.

Certainly Ceska's patent was in a cognate art to the art of Stephens' patent, and if Stephens' egg cup can be considered as disclosed in his claim 23, its use as a holder for the fabric to be restored is not an instance of the exercise of the inventive faculty over Ceska.

I think, therefore, that Stephens was not entitled to a patent for his method which is the only subject matter of the present suit.

■ VI. When I come to the question of infringement, I feel equally clear.

Even if it be assumed that the Stephens patent discloses a punch motion through the fabric with the needle held at a substantial angle therefrom—and perhaps it is fair to say that there is a slight hint of such a motion implicit in the words used in the first part of the specification in reference to "a porcelain dish allowing sufficient depth for the free use of the needle"—I think that when it comes to the needle employed by the defendants, the plaintiff cannot invoke the doctrine of equivalence in the method used by the defendants.

Stephens' original claim which was rejected on Pogson and canceled—paragraphed to show the steps of the method—reads thus:

"Claim 10. A method of needle work which consists in

"stretching the fabric over a suitable holder and

"inserting a needle having a magnetized curved hook, a magnetized curved latch or bridge, and a bevelled side-guard, through the loop of a run or ravel,

"grasping the adjacent thread with th»

latch, forcing it into the hook pulling the thread through the loop,

"grasping the next thread, forcing it into the hook and pulling it through the loop formed, etc.,

"until the run or ravel is repaired."

The insertion of the word "pivoted" in the method claim finally put forward by Stephens in his first patent, after disallowance of his original method claim No. 10, narrowed the claim so that it did not cover all kinds of needles usable for knitting but merely "pivoted" latch needles.

The use of the pivoted latch needle disclosed by Stephens so magnetized as to make the hook repel the latch and thus open it on the forward stroke is ineradicably a part of the plaintiff's method, because the description in claim 23 of the operation of Stephens' needle device does not describe anything except a pivoted latch needle, and he says in his specification that "it is impractical to use other needles with my method."

He says that the needle is inserted into the run or ravel "until the loop has slid back over the end of the latch and beneath the latter, then reversing the movement of the device through the loop, catching the next forward thread in the hook while the loop is being pulled over the latch causing the latch to close over the thread."

With the defendants' sliding latch needle the loop never gets "beneath" the latch nor does the needle catch "the next forward thread in the hook while the loop is being pulled over the latch."

Furthermore, it is to be remembered that in his specification, page 1, lines 24 to 35, Stephens has emphasized the fact that in his magnetic needle the latch or bridge is opened by the magnetism and is not forced open by the thread. Therefore, a thread opened needle, such as the defendants' sliding needle, is specifically excluded from Stephens' monopoly.

The defendants' method, therefore, is not the same as the plaintiff's method because the defendants use a needle which is a radical departure from the plaintiff's needle.

That the result reached is the same is immaterial because it is not reached in the same way.

Though the question of infringement is nice, and may, perhaps, be said to turn on the point of a needle, it is at just that point that the plaintiff, as Stephens' assignee, finds itself estopped, for in view of the Patent Office history of the Stephens' patent it cannot, by the doctrine of equivalents or otherwise, secure a construction for its method claim 23 which will cover the defendants' needle and make its present method claim as broad as the claim No. 10 in the rejection of which Stephens acquiesced. Smith v. Magic City Club, 282 U. S. 784, 789, 790, 51 S. Ct. 291, 75 L. Ed. 707; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 444, 47 S. Ct. 136, 71 L. Ed. 335.

VII. In view of the above findings it becomes unnecessary to discuss the relationship between the Kayser Hosiery Motor-Mend Corporation and Julius Kayser & Company, or the legal implications arising therefrom.

VIII. This opinion may stand as the findings of fact and conclusions of law required under Equity Rule 70½, title 28, U. S. Code, § 723 (28 USCA § 723), and I will sign an order so providing. Hazeltine Corporation v. Radio Corporation (D. C.) 52 F.(2d) 504, 512; Lewys v. O'Neill (D. C.) 49 F.(2d) 603, 618; Briggs v. U. S., 45 F.(2d) 479, 480 (C. C. A. 6). Cf. also, The El Sol (D. C.) 45 F.(2d) 852, 856, 857.

An order to this effect may be separately presented or embodied in the final decree dismissing the complaint, with costs, and presented to me for signature on three days' notice.