## UNITED STATES v. MARINI.

District Court, S. D. New York.
Nov. 4, 1936.

964

Lamar Hardy, U. S. Atty., of New York City (Thomas McCall, Asst. U. S. Atty., of New York City, of counsel), for the United States.

S. Samuel DiFalco, of New York City (Arthur N. Field, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

My judgment in this cause is that the bill of complaint must be dismissed, but, of course, in view of the fact that it is brought by the United States, the dismissal will be without costs.

I. This is a bill in equity to set aside an order made by Judge Goddard on May 19, 1930, whereby the defendant was admitted to citizenship on recommendation of and after due examination before an examiner designated by this court for examination in naturalization, in pursuance of section 4, subd. 14, of the Act of Congress of June 29, 1906, as added by Act of June 8, 1926, title 8, United States Code, § 399a (8 U.S. C.A. § 399a).

II. Photostat copies of the defendant's declaration of intention, verified March 12, 1924, his petition of naturalization, verified June 26, 1929, and his certificate of naturalization dated May 12, 1930, were certified and offered as exhibits in this cause.

The certificate for naturalization stated inter alia: "Attached hereto and made part of this petition are my declaration of intention to become a citizen of the United States and the certificate from the Department of Labor, together with my affidavit and the affidavits of the two verifying witnesses thereto, required by law."

The affidavits referred to were at the foot of the petition for naturalization. The certificate from the Department of Labor was a separate document and was not included in the exhibits submitted to me.

This was an unfortunate omission, not only in respect of fairness to the defendant, but also in respect of the whole structure of the government's case, for without it, it was extremely difficult to see how the original entry in the manifest hereinafter discussed could assume such a large role in the government's attempt to make out fraud.

Since the trial I have examined the original papers, on which the court acted in respect of this alien, on file in the naturalization part of this court and subject to my judicial notice. I find that the certificate referred to in the petition reads in full as follows:

"Form 145     Certificate Of Arrival—For Naturalization Purposes

"(This certificate is for the use of the person applying for it only, and is issued for naturalization purposes in compliance with the Act of June 29, 1906, sec. 4, subd. 2, par. 4 [8 U.S.C.A. § 380], requiring a certificate from the Department of Labor stating the date, place, and manner of arrival in the United States.)

---

"U. S. Department of Labor
"Bureau of Naturalization

---

"Certificate of Arrival Division Apr 26 1929
"Ellis Island, New York

"This is to certify that the following-named alien arrived in the United States on the date and in the manner described below, at Ellis Island, New York.
"Name of alien:      Marini, Odoacre
"Date of arrival for per-
   manent admission:    December 21, 1923
                   Verified for permit
"Manner of arrival:      Leviathan
"Issue No. 698200
"By Direction of the Secretary of Labor:
          "Raymond F. Crist
      "Commissioner of Naturalization"

Across the face of this certificate is stamped with a rubber stamp the words "Naturalization Service Received Apr 27,

1929, District Director, New York, N. Y., Department of Labor." The petition for naturalization to which it was attached was verified on June 26, 1929.

Under the teachings of the case of Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156, the jurisdiction of this court to grant the order of naturalization to the defendant was thus prima facie established.

The granting of the order established the status of the defendant as a citizen of the United States, and that status can only be destroyed by proof that the prescribed qualifications for his citizenship did not exist in fact. In that event the order of naturalization is subject to cancellation by proceedings under section 15 of the Naturalization Act, title 8, United States Code, § 405 (8 U.S.C.A. § 405). A decree or final order in naturalization, which creates a new right, is, therefore, not protected by the usual buttresses which make firm final judgments or decrees fixing existing rights between parties. Maney v. United States, 278 U.S. 17, 22, 23, 49 S.Ct. 15, 16, 73 L.Ed. 156.

Owing to this peculiar structural instability of decrees and orders in naturalization, a proceeding such as this under the said section 15 should not be successful unless the fraud or illegality complained of by the government as leading to granting of the order of naturalization, and the certificate of citizenship issued in pursuance thereto, be proved by the clearest and most satisfactory evidence, for it is obviously unfair that an alien who has become a citizen should feel that his citizenship is an unstable status which can be easily destroyed by government proceedings against him, irrespective of how long he may have lived here or of the ties of family or property by which he may have become bound. This is peculiarly true in this cause, for a decree for the government herein would probably lead to the defendant's deportation.

III. It is common ground that the defendant could not have come in under the Italian quota at the time when he landed in New York, and that under the statutes then existing he could not have come in as a permanent resident except under the provisions of section 2(d) of the Quota Act (42 Stat. 5).

The only basis on which he could have come in for permanent residence, which might lead to his naturalization if he desired it, was under section 2(d) of the Quota Act which provides that "aliens who are * * * lecturers * * * may, if otherwise admissible, be admitted," irrespective of the then quota situation of the particular nation from which they may come.

IV. The government claims that the order of naturalization involved in this cause was secured by the fraud of the defendant, owing to a forgery of the immigration manifest recording the terms of his entry, and the sequelae of such forgery; e. g., the certificate of arrival which has been set forth above.

V. The facts are as follows:

The immigration inspector who examined the respondent prior to his landing was Vincent F. Jankowski, now retired. He was an inspector of considerable experience and was called by the government to establish that there had been a penciled change in volume 7848, of the manifest kept by the Commissioner of Immigration for alien passengers arriving at the port of New York. Jankowski entirely failed to establish this. He admitted that he had made some pencil notations in the manifest, namely, that in column 7, as to the calling or occupation of the immigrant, he had written "Grad of Literary School and author" over the word "Journalist"; but he was unwilling to say that the word "Perm"—meaning permanent—in column 20 of the manifest, which states the purpose of the visit to the United States, had not been written by him. It was, apparently, an obvious substitute for the words "6 mo." or 6 months. He was also unwilling to state that he had not written the figure "9" in column 32, headed "Marks of Identification." The figure "9" in the shorthand of the immigration officers means "Exempt." Jankowski's recollection was admittedly and naturally enough limited to the written record.

Jankowski had inspected thousands of immigrants; for the defendant it was the only instance on which he had been inspected. Of the two, his recollection of the incident would be much more likely to be correct, assuming he was an honest witness.

The defendant made an excellent impression on me and I believe his story. He says that he was sent over by an Italian paper, published in Rome—the name of which was La Gazzetta Del Lazio—as its correspondent in this country and as a lecturer in behalf of Fascism, which was then in its infancy. He was paid for some months in advance by his newspaper in or-

der that he might have-funds for his entrance. He came in with $600. He says that he told Jankowski, the inspector, that he was a lecturer as well as a journalist, and that he also told the inspector of his intention to come into the country as a permanent resident.

Jankowski was unable to contradict this and I accept the defendant's story. Indeed, the paper record with the word "Perm" in column 20 would, I think, override the letter "Y" in the first section of column 20, which is supposed to answer affirmatively the question, "Whether the alien intends to return to the country from whence he came after engaging temporarily in laboring pursuits in the United States."

In the manifest the defendant gave the address of his brother, Mario Marini, who was a worker on the steamship Leviathan and lived when in port at the Hotel Bijou, 61 West Eighth street.

On March 1, 1924, the defendant wrote a letter to the Immigration Department, from 262 West Fifty-Second street, whither he says he had gone after staying at the Hotel Bijou as long as he thought it wise in view of his limited means. That letter is stamped as having been received at Ellis Island on March 4th.

This letter may fairly be read as an expression of a desire on the part of the defendant to become an American citizen and an inquiry of how to go about it.

Under date of March 10th this letter was acknowledged by the Second Assistant Commissioner at Ellis Island in a letter addressed to Marini at 262 West Fifty-Second street under the name Marini Odoacre, a transposition of his family and given name not uncommon in Italy I am told but unknown here. The Commissioner promised that he would pass on the request to the Department of Labor at Washington and advise him on receipt of a reply.

The letter of acknowledgment and its envelope were returned to Ellis Island on the ground that the person addressed was not found at the address named, quite probably because of the transposition of names above noted.

Under date of March 20, 1923, the Second Assistant Commissioner at Ellis Island addressed a letter to "Marini Odoacre" in care of Mario Marini (his brother) at 61 West Eighth street, an address which the defendant had left several months earlier. .

This letter read as follows: "Replying to your letter of March 1, upon referring your case to the Department of Labor at Washington, the Second Assistant Secretary of Labor has denied your application for permanent admission and has directed that you depart from this country at the expiration' of your temporary stay. Please notify this office five days in advance of the name of the ship, date of sailing, room and ticket number in order that your departure may be verified by an officer of this station."

It is testified that this letter was mailed in the ordinary course from Ellis Island and it may, for aught I know, have reached 61 West Eighth street, but in any event the defendant denies having received it and I believe him, and so find.

The defendant's brother worked on the Leviathan and 61 West Eighth street was not his permanent but merely his intermittent address, and, consequently, it may well be that, if the letter reached 61 West Eighth street, it never was delivered to the defendant's brother, or to the defendant who had left there long before it could have been delivered to him.

On March 12th, before defendant had received any answer from Ellis Island, he filed his declaration of intention to become a citizen, stating under oath that it was his intention permanently to reside in the United States.

After he arrived here and during the early winter of 1924, he gave several lectures to Italian clubs in West New York, N. J., and sent various communications back to his newspaper, but towards the end of February or the first part of March his newspaper went out of business or was merged with another paper, and, consequently, he found himself about that time out of a job and without any further source of income. Since that time he has been engaged almost continuously in the restaurant business at various addresses.

On June 26, 1929, he filed his petition for naturalization which, as above noted, was entirely correct in form.

There was some evidence introduced by the government as to conversations with acquaintances in an endeavor to show that the plaintiff knew that he had not come in with the intention of being here permanently; but I think this was quite inconclusive, and that it does not bring home to the defendant any knowledge that he was in the United States other than on the basis of the record in his immigration manifest and his evidence; namely, that he got in outside

the quota as a lecturer and intended to stay here permanently.

I find, therefore, that the government has entirely failed to establish, by the quality of proof necessary in a proceeding of this kind, that the defendant was guilty of any fraud or illegality which caused or contributed to the granting of his order of naturalization or the issuance of his certificate of citizenship. Consequently, it follows that the complaint must be dismissed.

VI. This opinion will stand as the findings of fact and conclusions of law required under Equity Rule 70½ (28 U.S.C.A. following section 723), and I will sign an order so providing. Hazeltine Corporation v. Radio Corporation (D.C.) 52 F.(2d) 504, 512; Lewys v. O'Neill (D.C.) 49 F.(2d) 603, 618; Briggs v. United States, 45 F.(2d) 479, 480 (C.C.A.6); Stelos Company v. Hosiery Motor-Mend Corporation (D.C.) 60 F.(2d) 1009, 1013; Id., 72 F.(2d) 405 (C.C.A.2); Id., 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414. Cf. also, The El Sol (D.C.) 45 F.(2d) 852, 857; Southern Pac. Co. v. United States, 72 F.(2d) 212 (C.C.A.2).

An order to this effect must be included in the final decree dismissing the complaint, without costs, which may be presented to me for signature on two days' notice.