**HOFFMAN v. BERGER et al.**

District Court, S. D. New York.

Feb. 16, 1937.

Edward Thomas, of New York City (Edward Thomas and Louis H. Robinson, both of New York City, of counsel), for plaintiff.

Matthew G. Tooran, of New York City (Henry J. Lucke, of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

My judgment is that the bills of complaint in these causes should be dismissed with costs as against all defendants on the ground that the claims on which they are founded are invalid for want of invention and by reason of prior use.

I. This cause, commenced on January 11, 1934, is based on the claims of a hitherto unadjudicated combination mechanical pat-

ent which was applied for by Hoffman on May 26, 1916, and granted on December 25, 1917, and hence expired on December 25, 1934.

There is not any question of the locus standi of the plaintiff because the suit is by the patentee himself. Nor is there any question of jurisdiction or of venue.

The only question involved is that of the validity of the patent.

In two of these suits, namely, that against Fischer & Company, Inc., and that against Holland Hessol Company, Inc., there is not any proof of infringement. In the other causes some infringement would be established if the patent were valid.

II. The patent which Mr. Hoffman secured was for a combination undergarment for ladies. He described his invention thus in his specifications:

"My invention relates to an improvement in ladies' undergarments and is accomplished by combining an envelop chemise and petticoat so as to constitute a single garment. This is effected by lengthening the chemise and extending same the ordinary length of a petticoat and by securing to the inside of the chemise near the waist line two depending flaps, one in the front and one in the back of the petticoat, the back flap containing an envelop tab or band which passes between the legs on the wearer and buttons onto the front flap, so that when the said tab is buttoned or otherwise fastened, there is inside the petticoat the lower part of an envelop chemise."

The two claims, on both of which the plaintiff relies in these causes, are as follows:

"1. In a garment, the combination of

"a chemise having a skirt or petticoat,

"depending front and back flaps permanently attached to the inside of the skirt of the garment a short distance below the waist portion thereof,

"a band adapted to be passed between the legs of the wearer to connect the flaps, and

"fastening means detachably connecting an end of the said band with the free end of a flap, whereby leg or drawer portions are formed wholly within the skirt a considerable distance above the lower edge of the same so that a full skirt or petticoat effect is maintained."

"2. A chemise and full-length petticoat united in one garment

"with inside front and rear flaps substantially the width of the garment depending from near the waistline,

"and a tab united to one flap substantially centrally thereof

"and having means for detachably securing it to the other flap."

III. Some of the prior art patents which might be mentioned, and which show that the plaintiff's claims do not involve invention, are: Patent No. 443,390, granted December 23, 1890, to Camile Caen of New York for a combined waist and skirt; patent No. 920,688, granted May 4, 1909, to Emily Taylor for a uniongarment; and patent No. 1,029,583, granted June 1912, to Gerald Bennet of New York as assignor to Howard H. Hamilton, for ladies' underwear.

It seems to me that perhaps this latter patent is the nearest to the idea that the plaintiff had, although, of course, the plaintiff's differed in slight details.

IV. A clear case of prior use is made out.

I find that it is established beyond any reasonable doubt by the evidence of the witnesses connected with the Superior Petticoat Company, Inc., who were examined before me, that about 1913 that company, having theretofore confined its manufactures to petticoats, decided to go into a new branch of production and to make not only petticoats but also other kinds of women's lingerie; that it employed for that purpose a designer, Mr. Werter Friedman, in 1913. Mr. Friedman testified before me today and I believe his testimony. He says that he studied in Paris, became a designer, landed in New York City in 1902, and has always worked since in New York City; that he was employed by the Superior Petticoat Company, Inc., in the summer of 1913, and was engaged in developing for it the new department for women's lingerie which was contemplated as aforesaid and which was called the Primrose Undergarment Company. Mr. Friedman was employed by them only during the years 1913 and 1914, and during those years among the types of undergarments which he designed was what he called a "petticoat-pantie," which consisted of a combination of drawers and petticoat, and then, if you added, as he did, a camisole matching the "petticoat-pantie," to cover the upper part of the body, approximately the same garment results as that for which the plaintiff got his patent except

for the suggestion that the sides of the flaps were open.

■ In connection with the prior art citations and the proof of prior use, I think that when one reads the plaintiff's claims against the matrix of the prior art—which includes the prior use—as all patent claims have to be read, one becomes satisfied that the style changes necessary in order to achieve the purpose which the plaintiff claims he achieves, were far short of a step beyond the prior art which would constitute invention.

V. Furthermore, during the trial I was at pains to inquire from several of the witnesses, who seemed to be peculiarly competent in this branch of trade, as to what might be called the evolution of these undergarments for women.

That evolution was as follows:

As far back as 1911 or 1912 there was an undergarment known as the straight chemise—still sometimes worn. That was then the prevailing style of undergarment; next came along what was known as the envelop chemise, wherein there were tabs to put between the wearer's legs, to be there fastened and thus form a substitute for drawers.

It might be observed here that if a skirt of any kind should be added to this envelop chemise you would have practically the structure of the plaintiff's alleged patent.

The next step from the envelop chemise in this evolution was taken when some underwear makers began making petticoats which had little flaps inside of them, which when buttoned together would act as a substitute for drawers. For upper garments at that time women often wore what were known as camisoles, which only went from the shoulders to the waist with a petticoat below.

Then slips began to come in, though at first they were not popular, but finally came to take the place of the petticoat and the chemise. What they really amounted to was a petticoat plus a chemise.

Then a petticoat was made with a method of constructing drawers inside it, and when there was an upper part fastened to it, you would have an envelop slip of the plaintiff's patent if the tabs were not sewn together.

If you did sew the two tabs together at the side and thus made a skirt inside of the slip, you would not have what the plaintiff describes and claims in his patent. Such a construction would not, in my opinion, infringe his patent. Slips of this kind only were made by Fischer & Co., Inc., and Holland Hessol Company, Inc.

All the women's undergarments here under discussion, therefore, seemed to have emerged by an evolutionary process from the envelop chemise, and doubtless got their increased popularity when the wearing of corsets became less common.

VI. It is quite clear that there was not anything that properly could be called novel in the structure on which the plaintiff succeeded in getting a patent. Rather it seems to me that he was playing his part in the evolution of the art of designing women's underwear, and that he took three old elements and put them in collocation so that each of them performed its old service without achieving any new result.

■ The plaintiff's counsel argues with ingenuity that their new result was to give more comfort to the wearer and, perhaps, an added appearance of slenderness, but I cannot believe that is an adequate objective in a mechanical patent which consists of a combination of old elements each doing its own job, which I find is the situation here.

■ Whilst the plaintiff's garments may have been comfortable to the wearers and whilst he may have succeeded in selling a considerable number of them, I do not think —when one realizes that a patent is a monopoly—that a monopoly should be given to a person who has not done any more than the plaintiff has done in his patent; for a "monopoly" means the exclusion of others from doing the same or a similar thing, and also means that others who wish to do the same thing for market reasons have to pay tribute to the patentee unless and until some court decides, as I do here, that he has not the right of monopoly which he has claimed.

■ It seems to me perfectly clear that Mr. Hoffman's patent is invalid for want of invention, and, consequently, the complaints in these several causes which have been tried together must be dismissed.

VII. I do not wish to extend my reflections on this cause any further because I think that what I have said adequately deals with the matter.

■ VIII. This opinion may stand as the findings of fact and conclusions of law required under Equity Rule 70½, title 28, United States Code, § 723 (28 U.S.C.A. fol-

lowing section 723), and I will sign an order so providing. Hazeltine Corporation v. Radio Corporation (D.C.) 52 F.(2d) 504, 512; Lewys v. O'Neill (D.C.) 49 F.(2d) 603, 618; Briggs v. United States, 45 F.(2d) 479, 480 (C.C.A. 6); Stelos Co. v. Hosiery Motor-Mend Corp. (D.C.) 60 F.(2d) 1009, 1013; Id., 72 F.(2d) 405 (C.C.A. 2); Id., 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414; cf. also El Sol (D.C.) 45 F.(2d) 852, 856, 857; Southern Pac. Co. v. United States, 72 F.(2d) 212 (C.C.A. 2).

An order to this effect must be embodied in the final decree dismissing the complaints herein which may be presented to me by the defendants for signature on the usual notice, and which will give costs to the several defendants.