**STELOS CO., Inc., v. HOSIERY MOTOR-MEND CORPORATION et al.**

**No. 458.**

Circuit Court of Appeals, Second Circuit.

July 31, 1934.

Burke & Burke, of New York City (Vernon E. Hodges and Henry Gilligan, both of Washington, D. C., J. Preston Swecker and H. Hamlin Hodges, both of Washington, D. C., of counsel), for appellant.

Hugh M. Morris, of Wilmington, Del., and Julian S. Wooster, Noah A. Stancliffe, and George T. Barker, all of New York City (Donald Malcolm, of New York City, of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The invention is for a method of repairing "runs" in a stocking or the like. The fabric is stretched over a hollow holder like a cup or glass; a hook with a pivoted latch is then put through a loop of the "run" until the loop has slipped past the end of the latch, which it has meanwhile opened in its passage. The hook is then drawn back catching the next thread of the run, and by the same movement the first loop closes the latch, which with the hook embraces the caught thread, the first loop sliding off the closed latch. The caught thread can then be moved over the first loop to make a second loop, and will open the latch as the hook descends to catch a second thread with which to make a third loop. This process will be so repeated to the end of the run. The infringement is by a similar needle except that the latch slides to and fro longitudinally in the shank, instead of being pivoted. The specifications disclosed the hook and latch as magnetized so as to fly apart; and a "beveled side guard," whose function we reserve for the moment. The defendant did not magnetize its hook and latch, or have any side guard; but, since the claim in suit did not specifically incorporate either of these elements, this was alleged not to excuse it.

A British patent to Pogson, 168,817 (1921), which was never indeed sealed, but is a publication within the statute, disclosed a needle, with a hook and a pivoted, latch, and a stitch like Stephens's, except that there was probably no holder, the fabric being held over the fingers and the stroke substantially horizontal. The exact meaning of the specifications and figures of this patent are not important, because even if it were finally determined that the needle was to be used over some holder, as a disclosure it is too uncertain to be a good anticipation. It did not invalidate the patent, any more than did the failure to disclose an egg-cup as the "suitable holder," as the judge supposed. The language of the specifications, "porcelain dish, allowing sufficient depth for the free use of the needle" (page 1, lines 12–14), was entirely adequate. Any one who really wanted to practice the invention would easily find a convenient holder; a small glass, or a little coffee cup, or the like. Such a simple device is enough disclosed when it is described by its function.

Notwithstanding the ambiguity of Pogson, Stephens was not the first to invent an open holder, which permitted the needle to be raised above the work. On June 27, 1923, Otto C. Semonsen filed an application which resulted in patent No. 1,526,265; it disclosed a holder in the form of a drum over the top

of which the fabric was to be stretched. The needle, claimed in a companion application of the same date, had no latch and the loop was disengaged from it by a means not necessary to describe; but it was plainly to be used over "a suitable holder," which might have been an egg-cup, though it was not so disclosed; and thus it contained the feature lacking in Pogson, if Pogson really did lack it. Stephens filed his application on September 24, 1923, three months after Semonsen, and although Semonsen's patent was still in the office and did not count as prior art, Stephens was not the first inventor. Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651. He did indeed try to carry back his date to the spring or late winter of 1923, but the evidence was plainly insufficient, being no more than his oral testimony corroborated by that of his partner, Losh. Neither witness had a scrap of paper, or any physical embodiment of the invention to bear him out; and without something of the sort an inventor cannot antedate his application, except in very rare circumstances, among which certainly this case does not fall. Eibel Process Co. v. Minnesota, etc., Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523; Block v. Nathan Anklet Support Co., 9 F.(2d) 311 (C. C. A. 2). Ceska in 1920 (patent No. 1,337,884) had already disclosed a holder over the top of which the fabric to be darned was to be stretched; the mere notion of using something through which one could stitch, instead of over one's finger, was not therefore new even with Semonsen.

As we have already said, claim 23, the only method claim, did not incorporate any of the new structural variants of the needle, as did all the other claims. Claims 11 and 13 were for a peculiar lateral curve of both the hook and the latch; the purpose of which is somewhat obscure and need not be unravelled. All the other claims comprised as an element, either the magnetization of hook and latch, or the side guard, or both. The forerunner and parent of claim 23 was claim 10 of the original claims. This was also for a method, made up of the following steps: Stretching the fabric over "a suitable holder"; inserting a needle through a loop of the "run," grasping an adjacent thread which a latch should force into the hook; pulling this thread through the loop, grasping the next thread, forcing it into the hook and repeating the process. The needle was described as having the side guard, and the magnetized hook and latch, each being "curved" (incorporating the feature of claims 11 and 13). Obviously, at the beginning Stephens did not assert his invention broadly. The Examiner rejected this claim for two reasons: first, because it was not a method claim at all, being for a combination of method and "a specific construction of the needle"; second, because, as method, it was anticipated by Pogson. Stephens amended by substituting claim 23 as it issued. He eliminated all description of the needle, except to say that it was made up of a hook and pivoted latch. This apparently satisfied the Examiner's first objection; reasonably enough, because hook and pivoted latch were very old in the art and were not the "specific construction of the needle," which had vitiated the form of claim 10. Any new feature or step in the method claimed in claim 23 over claim 10, therefore became essential to an infringement, an element with which the doctrine of equivalents would not allow the patentee to dispense.' Smith v. Magic City Kennel Club, 282 U. S. 784, 790, 51 S. Ct. 291, 75 L. Ed. 707. The question is, whether there was any such feature, and what it was, remembering that in the comparison we should disregard any description of the needle.

We have in general stated the steps of claim 23 at the beginning; when however we deliberately left out the following clause: "While holding the device laterally out of alignment with the run." This is the position in which the needle is to be held in its original forward movement, during which the first loop passes beyond the end of the latch. Except for it there are no differences in the two methods, save some increase in particularity; if each claim be read with the specifications, it covers exactly the same method if this element be disregarded. The plaintiff says that the clause means no more than that the needle shall be held at a substantial angle to the plane of the fabric, and so it was held by the Court of Appeals of the District of Columbia in Finch Corp. v. Stelos Co., 60 App. D. C. 25, 46 F.(2d) 606. We cannot agree. In the first place, considering the antiquity of the hook and pivoted latch, we should hesitate to say that the claim, so construed, could survive Pogson and Semonsen. To use Pogson's stitch and needle with Semonsen's holder, might conceivably require invention, but it would be a very tenuous one at best. That would be particularly true in the case of an invention which followed so hard upon its predecessors. But aside from that, the words cannot be read as the plaintiff wishes. If Stephens had meant no more.

than that the needle should be held at a substantial angle to the fabric, he did not say so. The two straight lines of the needle and the "run," since they meet, fix a plane. If that plane is normal to the plane of the fabric, the needle is not "laterally out of alignment with the run"; it is directly over the "run" as one looks down upon it from above. There cannot be the least doubt that the clause meant to exclude just that; and must exclude it unless we excise the word, "laterally," altogether. Even if we should do that, the clause would be a most awkward one to express no more than that the needle should not be parallel with the fabric; fabric and "run" are quite different things. As mere matter of verbal interpretation the construction is inadmissible.

Moreover, there is at least a fair guess as to why Stephens chose this curious clause, which on its face seems meaningless. In the first place unless he was to persuade, or appeal from, the Examiner, he had to distinguish his claim from Pogson. It is true that his method included the holder, which by hypothesis Pogson did not show, and a holder implied that the needle could, and inevitably would, be held at a substantial angle to the fabric. But claim 10 had already prescribed the holder, and the distinction had not served. Stephens apparently went to his drawings, figures five and six, and to some extent figure four, to get a differential which would support his claim; certainly he adopted what these showed. It is quite true that the specifications said nothing about holding the needle off to the side of the "run"; conceivably the claim may be bad for that reason. But they did contain language which can be rationally connected with this position of the needle, and which at least gives the claim and drawings a possible significance. The specifications describe the functions of the guard in four places, of which we may ignore the last (page 2, lines 57–69; 93–97; 117–123; page 3, lines 47–49). Stephens' idea was that on the forward stroke the first loop should pass between the shank and the guard, any other loops riding over the guard. This would do two things; it would make sure that that loop should be in position to close the latch on the return stroke, and that it should be the only one that would; and it would spread the guard away from the shank, which in turn would spread the threads, "facilitating the stroke." On the return stroke the guard would prevent the hook from engaging any other threads than the proper one. Now in order to get the loop between the shank and the guard, it would certainly

appear easier to hold the needle off to the same side of the fabric that the guard is to the shank; though no doubt it could be done otherwise. At least it is a possible explanation of the drawings, and of the inescapable meaning of the claim, to which it alone gives any sense at all, so far as we can see. It is not, however, necessary that we should commit ourselves to this purpose of the disputed element in the claim, and we do not. Useful or useless, its meaning is clear and by it the applicant escaped the Examiner's ruling; he must abide his choice. Indeed at no time did he ever try to get a claim for the use of the old pivoted needle over "a suitable holder"; and on the whole he was wise not to do so, for his chances of success were remote, certainly until on an interference he could antedate Semonsen. The situation is a common one, in which having accepted a limitation to secure his claim, the patentee seeks to repudiate it in his dealings with the art.

[4] The decree is reversed, so far as it declared claim 23 invalid; it is affirmed so far as it dismissed the bill for non-infringement.