UNITED CHROMIUM, Inc., v. GENERAL
MOTORS CORPORATION et al.

No. 436.

Circuit Court of Appeals, Second Circuit.
Sept. 21, 1936.

Drury W. Cooper and Merrell E. Clark, both of New York City, Frank E. Liverance, Jr., of Grand Rapids, Mich., and Allan C. Bakewell, of New York City, for appellants.

Livingston Gifford, George F. Scull, Gustave R. Thompson, and Newton A. Burgess, all of New York City, for appellee.

Before MANTON, SWAN, and MACK, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of patent No. 1,581,188, application filed December 19, 1925, and granted April 20, 1926, to Fink for a process of electrodepositing chromium and of preparing baths therefor. We considered this patent heretofore and held it valid and infringed as to claims 1–6, 10–13, 15, 16, and 18. United Chromium, Inc. v. International Silver Co. (C.C.A.) 60 F.(2d) 913, 915. The claims here in suit are Nos. 4, 6, 10, 13, 16, and 18.[1]

In our former opinion we held that the novelty of the Fink invention lay in the composition of the bath for electrodepositing chromium and the realization that it was not necessary to add chromic sulphate $Cr_2(SO_4)_3$ as a catalyzer to the bath but that the sulphate radical $(SO_4)$ in any other form would do as well and that the important factor was the total amount of sulphate radical present, irrespective of the form in which it might be added. This court said:

"What Fink really did was to single out the acid radical as a catalyst, disregarding the substance which happened to contain it. * * * Nobody had thought of this before, and for that reason nobody had found a dependable process."

And further: "It was only after repeated experiments that it occurred to Fink that the radical alone was the catalyst, whether in chromic sulphate, in sulphuric acid, or not a sulphate radical at all. The

4. In a method of electrodepositing chromium from solutions of chromic acid, reducing the chromic acid at the cathode by a catalyst, said catalyst being a radical which normally is an anion.

6. In a method of electrodepositing chromium from solutions of chromic acid, reducing the chromic acid at the cathode by a catalyst, said catalyst being a sulphate radical not exceeding the proportion of 5 grams per litre of solution having a concentration of 250 grams chromic acid, or an equivalent amount of an equivalent radical or radicals, the total of said radicals being stable radicals.

10. In a method of electrodepositing chromium from solutions of chromic acid, reducing the chromic acid at the cathode by a catalyst, the total of said catalyst being stable radicals not exceeding an amount equivalent to the proportion of 5 grams of sulphate radicals per litre of solution containing 250 grams of chromic acid.

13. A method of electrodepositing chromium from solutions of chromic acid, comprising reducing chromic acid at the cathode in the presence of a catalyst and of a protecting hydrogen film, the total of said catalyst being stable radicals not exceeding an amount equivalent to the proportion of 5 grams of sulphate radicals per litre of solution containing 250 grams of chromic acid.

16. A method of preparing solutions for electrodeposition of chromium, comprising dissolving commercial grades of chromic acid ascertaining the amount of catalytic radicals therein, and adding to or removing from said solution sufficient catalytic radicals to make a total amount of catalytic radicals present in the solution equivalent to the proportion of 5 grams or less of sulphate radicals per litre of solution containing 250 grams of chromic acid.

18. A process for the continuous electrodeposition of chromium, comprising regulating the content of stable radicals (catalytic agent) in the bath to an amount not exceeding the proportion of 5 grams of sulphate radicals per litre of solution containing 250 grams of chromic acid.

optimum ratio then followed from trial and error."

The record here differs from that in the International Silver Case, supra, in that the evidence clearly establishes prior invention of the essential principles by Marvin J. Udy. Udy was employed by a subsidiary of the Union Carbide & Carbon Company, and filed an earlier application for a patent on a process for electrodepositing chromium discovered by him. After Fink's patent issued, an interference was declared between his claims and those of Udy. However, the General Chromium Company, which owned the Udy application, and the company owning Fink's patent combined and formed the appellee. Udy, under protest, filed a concession of priority to Fink and subsequently waived the right to the issuance of a patent to himself. (Fink claims May 1924 as the date of his invention.) Udy was a chemist of wide experience and commenced work on chromium plating in 1922 at the plant of the subsidiary corporation of the Union Carbide & Carbon Company. His employer was developing processes both for chromium "winnings" and for plating of articles it manufactured.

The record on this appeal contains contemporaneous written records of Udy's work which constitute a complete and scientific disclosure. These reports, beginning with July 18, 1922, and the first detailed chemical analysis of the solution used in tests were reported October 16, 1922. Until the fall of 1923, Udy used a bath consisting of chromic acid ($CrO_3$) and chromium sulphate $Cr_2(SO_4)_3$. In order to insure the purity of his chromic acid, Udy made it a practice to treat it with a barium compound to precipitate and remove the sulphate which it contained as an impurity. The appellee's expert acknowledges that the use of barium is a satisfactory way to insure the absence of sulphate in chromic acid. In the course of an investigation by Udy of anode coatings, he produced a bath containing chromic acid free of sulphur. No chromium metal was deposited, so he began to sulphate the anode, and, seeing the results, he records that it led him to a decision "to begin a series of runs in which we added a solution containing barium and remove the $SO_4$ from solution in small steps until the solution was entirely free of $SO_4$. This would show whether $SO_4$ is necessary. This work is now in progress."

He was determining what part, if any, the acid radical, specifically the sulphate radical $SO_4$, plays in chromium plating and in the conclusion of his report, Udy makes the statement which shows that he was then on the trail of the matter which Fink claims to have invented. After stating the belief that it was unnecessary to have the sulphate radical $SO_4$ present in the form of chromic sulphate $Cr_2(SO_4)_3$, but that it was more likely that a small amount of the free sulphate radical $SO_4$ was necessary, he records:

"The question of $SO_4$ and reduced chromium in solution is not yet clear but future work may tell if one or the other or both are necessary for the deposition of chromium."

By December 7, 1923, Udy had a complete understanding of the invention. This recorded the discovery that a small amount of the acid radical, $SO_4$ was necessary, and that $Cr_2(SO_4)_3$, previously used, was not important. His report on February 4, 1924, contained a full detailed description covering periodical analysis of the baths, charts of operations and results, discussions of results and reasons therefor, limits of concentration in the bath and the chemical features thereof, and the conclusion that:

"The governing factors in electrolysis of such solutions are the $SO_4$ content, the concentration of chromium in solution and the temperature. The limits to the above factors have already been made and discussed."

This was a complete statement as to the governing factor recorded by Udy at least three months before any date asserted by Fink, and nearly two years before the latter's application. In March, 1924, Udy prepared a report of his achievements to date. This was done in the usual course of business and copies submitted to his superiors. Among other things he said:

"It is thus seen that the addition of $Cr_2(SO_4)_3$ is simply a method of adding $SO_4$ to the solution and in itself is of no importance."

This report of Udy contained the complete scientific disclosure of the matters of the claims patented. In these records, prior to Fink's date of conception, Udy told how to make and maintain a bath of pure chromic acid by controlling the acid radical.

Udy's was no abandoned experiment. He continued to use the limits on the amount of $SO_4$ in the solution, as determined by him then, until 1931. Moreover, he used his invention in practice. Up to October, 1927, Udy plated articles sent to him; the specific things are shown in great number in the record. Besides, he succeeded in "winning" by his method of electrodeposition 1,400 pounds of pure chromium, enough to have plated thousands of automobile radiators. This "reduction to practice" use provides a safe margin over that required for "reduction to practice." Cf. Egbert v. Lippmann, 104 U.S. 333, 26 L.Ed. 755.

In June, 1924, a patent application signed by Udy was filed by his employer. This was 18 months before Fink's filing. No interference with Udy's application was declared by the Patent Office when Fink filed his application. Later on, however, at Udy's request, interference was declared. In his application, Udy's discovery is disclosed. It reads:

"In accordance with my invention, chromium is deposited from an aqueous solution of chromic acid containing a closely controlled quantity of sulphuric acid."

The appellee, having acquired and controlling Udy's application, obtained his waiver and concession of priority to Fink, as related above. But the fact that Udy had proceeded to apply for a patent, which was only withdrawn a long time after Fink applied for his patent, is proof that Udy had not abandoned, but was asserting, his invention. Cf. Smith v. Hall, 83 F.(2d) 217 (C.C.A.2).

On this record, differing as it does from the record before the court when the patent was previously considered by us, we are satisfied that there was prior invention established by the evidence of Udy's knowledge, practice, and prior patent application. This prior invention makes Fink's patent invalid; he was not the "first inventor," nor was his process "not known or used by others in this country, before his invention," within the statute. Rev.St. § 4886, as amended by Act March 3, 1897, c. 391, § 1, 29 Stat. 692, as amended by Act May 23, 1930, c. 312, § 1, 46 Stat. 376 (35 U.S.C.A. § 31). See, also, Rev.St. § 4920, as amended by Act March 3, 1897, § 2, 29 Stat. 692 (35 U.S.C.A. § 69).

In view of Udy's prior invention, his patent application should have been grant-

ed rather than Fink's, since Fink was not the first inventor, and Fink's patent must be held invalid. Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Stelos Co., Inc. v. Hosiery Motor-Mend Corp., 72 F.(2d) 405, 406 (C.C.A.2).

Decree reversed.