**AERO NECK–BAND & COLLAR CO., Inc., et al. v. FENWAY FABRICS, Inc., and seven other cases.**

District Court, S. D. New York.

June 22, 1937.

Maxwell E. Sparrow, of New York City (W. Hastings Swenarton, Maxwell E. Sparrow, and Robert M. Kristal, all of New York City, of counsel), for plaintiffs.

Hays, St. John, Abramson & Schulman, of New York City (John Schulman, and Irving F. Goodfriend, both of New York City, of counsel), for defendants Fenway Fabrics, Inc. and Estes & Blum, Inc.

Charles Marcus, of New York City (Irving F. Goodfriend, of New York City,

of counsel), for defendants Dresswell Shirts, Inc., Beaver Mfg. Co., Inc., Apex Shirt Trimming Company, Inc., Hyman Heller, doing business as Perfect Neck Band Company, Frances Emblems, Inc., Chemical Coating & Treating Co., Charles Emmey, and Frederick N. Duerk.

Frederick Griswold, Jr., of New York City (Frederick Griswold, Jr., of New York City, and J. Russell Juten, of Washington, D. C., of counsel), for defendant Criterion Shirt Band Co., Inc.

WOOLSEY, District Judge.

I hold that the plaintiffs may file the proposed disclaimers submitted by their counsel during the trial and dealing with all four claims of this patent.

On the basis of the claims so narrowed by these disclaimers, I hold all four claims valid.

I hold that the first claim—the basis of the suit as against all the defendants except the Criterion Shirt Band Company, Inc.—was directly infringed by Dresswell Shirts, Inc., and Beaver Manufacturing Company, Inc.

I hold that there was contributory infringement of claim 1, as narrowed, by Fenway Fabrics, Inc., by Apex Shirt Trimming Company, Inc., and by Hyman Heller, doing business under the name of Perfect Neck Band Company, Inc.

I hold that the Criterion Shirt Band Company, Inc., was guilty of contributory infringement of all four claims as narrowed.

I dismiss the claim of unfair competition brought against the plaintiffs.

I entered, on consent of the parties, orders of discontinuance, *with* prejudice and without costs, in the suits against Estes & Blum, Inc., and Frances Emblems, Inc., during the trial.

I. This is a series of suits by the sole licensees and owners of the United States patent No. 1,995,187, issued March 19, 1935, for a collar, neckband or other garment part.

There is no dispute as to the subject-matter jurisdiction of the complaints. There is no dispute as to the venue of the causes in this district, or as to the locus standi of the plaintiffs to maintain them.

II. The validity of the patent is challenged for lack of invention, and for lack of proper disclosure. It is also claimed that the original claim 1 is too broad.

Direct infringement of claim 1 is alleged as against the Dresswell Shirts, Inc., and the Beaver Manufacturing Company, Inc.

Contributory infringement of claim 1 is alleged as against Fenway Fabrics, Inc., Apex Shirt Trimming Company, Inc., and Hyman Heller, doing business as the Perfect Neck Band Company.

Contributory infringement of all four claims is alleged against the Criterion Shirt Band Company, Inc.

These alleged infringements are all severally denied.

III. Towards the end of the trial a procedure was initiated in this case which I have never before come across, namely, the filing of a disclaimer during a litigation.

However, plaintiffs' counsel has called my attention to a number of decisions in this and other circuits which support the practice, if the disclaimer is properly made.

For example, in this circuit, Schillinger v. Gunther (1879) 21 Fed.Cas. p. 696, No. 12,458, 17 Blatch. 66; Electrical Accumulator Company v. Julien Electric Company (1889) 38 F. 117, 135, 136 (C.C.S.D.N.Y.); Simplex Railway Appliance Company v. Pressed Steel Car Company (1911) 189 F. 70, 71, 72 (C.C.A. 2); Strause Gas Iron Company v. William Crane Company (1916) 235 F. 126 (C.C.A. 2); Marconi Wireless Telegraph Company v. De Forest Radio T. & T. Co. (1917) 243 F. 560, 565 (C.C.A. 2); Permutit Company v. Harvey Laundry Company (1922) 279 F. 713 (C.C. A. 2).

In the Marconi Wireless Case, Judge Hough, dealing with the subject of disclaimers pendente lite, said, 243 F. 560, at page 565: "The contention that Fleming's patent, whatever its original merit or lack thereof, was voided by an unlawful disclaimer, is without substance. The mistake (if there was one) was in claiming something not needed, and the disclaimer abandoned what was not wanted, without broadening or enlarging any claim; it also left the claims fully supported by the original specification. No injury to defendant, or any one else, is shown. The procedure is within Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968, and our former decisions in Simplex, etc., Co. v. Pressed Steel Car Co., 189 F. 70, 110 C.C.A. 634, and Strause, etc., Co. v. Crane Co., 235 F. [126] at page 129, 148 C.C.A. 620."

A similar practice was approved quite recently by the Circuit Court of Appeals for the Sixth Circuit in Michigan Carton Company v. Sutherland Paper Company (1928) 29 F.(2d) 179, 184.

Before effect is given to a disclaimer filed during a litigation it is, of course, necessary to scrutinize it with care.

I have carefully gone over the claims as embodied in the disclaimer and compared them with the claims in the patent.

I find that the disclaimer does not broaden any claim of the patent, and that the claims embodied in the disclaimer are fully supported by the original specification. Indeed, except in the case of the first claim, which was, perhaps, too broad, I do not think the disclaimer was necessary. But, in any event, allowing the disclaimer to be filed and basing my decision on the claims as changed thereby does not cause any injury to the defendants, and enables me to find infringement of all the claims of the present patent and thus protect a valuable forward step in the collar making art which I think is entitled to the status of an invention.

IV. A. The specifications of the patent, United States No. 1,996,187, state:

On page 1, column 1, at lines 31–40:

"Collars (both of the attached and separate type), neckbands and cuffs for shirts, of the better grade are made up of three-ply material, namely, inner ply, outer ply and intermediate ply, the latter usually termed the interlining. The interlining heretofore used in the construction of such articles comprised a shrunk heavy, coarse fabric, having comparatively large textural interstices to retain the starch to stiffen the article and give it body when laundered."

On page 1, column 2, at lines 13–34:

"Such coarse interlining, even when treated with stiffening materials other than starch, would make the collar or neckband bulgy in appearance and uncomfortable for the wearer. Hence, the material selected as an interlining becomes an important factor in the making of a flexible, comfortable and good-looking article of the class referred to.

"We have found that by using the interlining made from a light weight, fine yarn cloth of a count between approximately 67x72 and 96x100 threads to the square inch, such as, for example, fabric, commonly known as print cloth, and coating both sides of the said interlining with a suitable waterproof, elastic or flexible agent, a medium or instrumentality is provided which when fused to the outer and inner plies of the article by the simple application of a warm iron, imparts to the article all the desirable attributes and characteristics stated hereinabove, and rids the article of all the hereinbefore mentioned disadvantages."

On page 2, column 1, from line 71 to line 39 in column 2:

"It is further essential to keep the interstices between the threads of the interlining at a minimum as this materially aids in making the article flexible and free from wrinkles when treated with the stiffener. This cannot efficiently be accomplished by using the usual coarse stiffening.

"The interlining used in this invention, is a fine yarn, light weight fabric, such as for example, print cloth, completely coated on both sides with a flexible, waterproof cementitious material. We have found that by treating a fine yarn, light weight cloth having a mesh of substantially, say 68x72 or 96x100 threads to the square inch, or thereabout or therebetween, and coated on both sides with a flexible, waterproof, cementitious substance, an interlining is provided which has just the desired stiffness, yet remaining soft, and which is flexible and pliable, and when fused to the outer and inner plies keeps the collar smooth and the edges free from bulginess.

"By reason of the fact that the flexible, waterproof, cementitious substance does not penetrate or impregnate the interlining (by reason of the fine mesh) but remains on the surfaces thereof, the softness, and flexibility of the article is not impaired.

"The interlining is treated its full length, and width including the seam lines, so that the flexible, waterproof cementitious substance also appears at the seams and fold over lines and particularly at the parts of the collar, neckband, or cuff which come in close contact with the body and thereby subjected to moisture or perspiration, and the article will thus be prevented from wilting or wrinkling.

"As an example of producing a collar, cuff, or neckband according to our invention, we take print cloth having a mesh of say, 80x80 threads to the square inch and cut it to shape for utilization as an interlining for the article intended and coat both sides completely with the flexible, waterproof, cementitious substance."

On page 2, column 2, from line 50 through line 61:

"The above interlining with the said coating on both sides is fused to the inner and outer plies by the simple application of a warm iron, the whole presenting a unitary structure, and once being fused together the plies and interlining will not separate during laundering or otherwise. The article will not wilt, wrinkle or crease after washing and only requires a warm iron to smooth it out. The article will be stiff enough to prevent wrinkling and still maintain a certain softness necessary to the comfort of the wearer."

B. The original claims were as follows:

"1. A folded article of wearing apparel comprising plies of material, and an interlining between the plies and extending over the fold line thereof, said interlining comprising a sheet of closely woven textile material having a coating or coatings thereon uniting it to an adjacent ply or plies at least at the fold line, whereby the article is flexibly stiffened at least at the fold line without appreciable bulkiness.

"2. A folded article of wearing apparel comprising fabric plies, and an interlining between the plies and extending over the fold line thereof, said interlining comprising a sheet of woven textile material so closely woven as to receive a coating of cellulosic material on a surface thereof, said sheet having a cellulosic coating of cementitious material on one or both surfaces thereof uniting its entire surface or surfaces to an adjacent ply or plies, whereby the article is flexibly stiffened at least at the fold line without appreciable bulkiness.

"3. A folded article of wearing apparel comprising plies of material having an interlining therebetween extending over the fold line thereof, said interlining comprising a sheet of textile material having a weave of between approximately 68x72 and 96x100 threads to the square inch and having a uniting coating or coatings on one or both sides thereof at least at the. fold line, whereby the article is flexibly stiffened at least at the fold line without appreciable bulkiness.

"4. A folded article of wearing apparel comprising fabric plies having an interlining therebetween extending over the fold line thereof, said interlining comprising a sheet of woven textile material having a weave of between approximately 68x72 and 96x100 threads to the square inch and having thermoplastic coatings on opposite sides thereof uniting approximately its entire surface to the adjacent plies including the fold line, whereby the article is flexibly stiffened at least at the fold line without appreciable bulkiness."

The claims as narrowed by the disclaimer filed are as follows:

1. "A folded collar, comprising fabric plies of textile material, and an interlining between the plies and extending over the fold line thereof, said interlining comprising a sheet of light weight, closely woven textile material having a thermoplastic, waterproof, cementitious coating or coatings thereon extending over substantially the entire surface of each side of the interlining and uniting substantially the entire surface of each side thereof to an adjacent ply or plies and at least at the fold line of the collar, whereby the collar is flexibly stiffened at least at the fold line without appreciable bulkiness."

2. "A folded collar comprising fabric plies of textile material, and an interlining between the plies and extending over the fold line thereof, said interlining comprising a sheet of light weight woven textile material so closely woven as to receive a thermoplastic, waterproof cementitious coating of cellulosic material on a surface thereof, said sheet having a thermoplastic, waterproof cellulosic coating of cementitious material on both surfaces thereof uniting its entire surfaces to each of the adjacent plies and at least at the fold line of the collar, whereby the collar is flexibly stiffened at least at the fold line without appreciable bulkiness."

3. "A folded collar comprising fabric plies of textile material having an interlining therebetween extending over the fold line thereof, said interlining comprising a sheet of light weight, textile material having a weave of between approximately 68x72 and 96x100 threads to the square inch and having a uniting thermoplastic waterproof coating or coatings on both sides thereof and extending over substantially the entire surface of each side and at least at the fold line and serving to unite approximately the entire surface of each side thereof to an adjacent ply and at least at the fold line of the collar, whereby the collar is flexibly stiffened at least at the fold line without appreciable bulkiness."

4. "A folded collar comprising fabric plies of textile material having an interlining therebetween extending over the fold line thereof, said interlining comprising a

850

sheet of light weight woven textile material having a weave of between approximately 68x72 and 96x100 threads to the square inch and having thermoplastic waterproof cementitious coatings on opposite sides thereof uniting approximately its entire surfaces to the adjacent plies including the fold line, whereby the collar is flexibly stiffened at least at the fold line without appreciable bulkiness."

V. The achievement of the patentees which entitles them to the status of inventors was a slight, and in retrospect a simple thing, but for some reason no one had achieved it before, though many had sought it. It was to make an unstarched collar which would have a neat appearance, and would be only flexibly stiffened so as to combine starched collar appearance with soft collar comfort.

The fold line, which comes where the collar leaf—of which the outside ply is the visible part of a collar when worn—joins the neckband, seems to have been one of the difficulties to manufacturers of unstarched collars.

No one, before the patentees, had succeeded in so constructing the fold line as to make it, throughout its length, impervious to perspiration.

Another difficulty was that the unstarched collar leaf, which is an article of laminated textile constructed of three layers—an interlining and two outside plies—could not be made stiff enough to present a good appearance without using a somewhat coarse and heavy interlining, which did not permit of a successful addition of coating or starch except at the sacrifice of the wearer's desire for soft collar comfort. Furthermore, if such interlining were carried over into the neckband it made a clumsy fold line.

The patentees conceived the idea that if they made a thin collar leaf wherein the usual three plies were fused together by applying heat to a thermoplastic cementitious substance, coating the whole area of both sides of a light weight closely woven interlining, they would achieve a thin fused unitary collar leaf which would avoid the fold-line difficulty above mentioned, both from the point of view of appearance and of resistance to perspiration.

They bought their interlining and had it coated for them with a coating, which in their opinion properly balanced the characteristics of flexibility and stiffness which were their objective. Then they manufactured some collars and found they had turned the trick which others had failed to do.

Thus the first wholly fused collar was made.

Marketwise this collar was successful beyond the dreams of the patentees. They began commercial production in the middle of the year 1934, and by January 1, 1935, had sold 15,935 dozen processed interlinings, and in the year 1935 had sold the amazing number of 854,474 dozen thereof.

Imitators infringing their patent then began to impinge on their sales as was expectable, but the success has continued, and loyal customers are still buying the plaintiff's processed interlining in increasing quantities.

VI. The defendants seem to me to have depended on the multiplicity rather than the felicity of their references.

The Liebowitz patents, Nos. 1,968,409 and 1,968,410, both granted on the same day, July 31, 1934, on applications filed respectively on April 5, 1932, and May 31, 1933, are the best of the plaintiffs' references, and, as the applications were pending when the plaintiffs filed their application on July 26, 1934, are to be regarded as in the prior art because their disclosures had been communicated to the United States through the Patent Office and so were known to the grantor from whom the plaintiffs were seeking their monopoly. Milburn Company v. Davis-Bournonville Company, 270 U.S. 390, 401, 46 S.Ct. 324, 325, 70 L.Ed. 651; Hazeltine Corporation v. Radio Corporation of America (D.C.) 52 F.(2d) 504, 509, and cases there cited in footnote.

Neither of the Liebowitz patents was an anticipation of the plaintiff; and, as citations in the prior art, they do not preclude a recognition of an inventive act by these patentees, for Liebowitz disclosed a special fabric containing occasional threads of a suitable cellulose derivative which, after fabrication into a collar, had to be subjected to a treatment by a suitable solvent to enable the fusing under heat and pressure of the said threads with the outer plies of the collar.

This fusion was not throughout the laminated leaf of the collar but only at the points where the threads of cellulose derivative occurred.

Furthermore, if there occurs during laundering any separation between its partly laminated layers, a Liebowitz collar cannot

be fused again by pressing with a heated iron.

In the plaintiffs' construction, however, such re-fusing is possible because of the thermoplastic characteristic of the coating of their interlining, and there is no extra process necessary, after the collar is fabricated, to create the initial fusing except the expectable application of heat and pressure to the plaintiffs' thermoplastic coating.

Thus the plaintiffs, have made over Liebowitz a definite advance which has simplified the problem of a fused collar both in·manufacture and maintenance, and has been most hospitably recognized by the trade as a real contribution to collar manufacturing art.

Such extraordinary commercial success as this patent has had is, I find, the strongest kind of objective testimony of invention from those who are in the trade.

Indeed, the casting consideration with regard to this invention in my mind is the commercial success of it. Many people had been trying, and all of them had failed, to get the kind of a fused collar that the patentees succeeded in getting. It is true that the coating was not their own, that the textile of the interlining was old, and that the method of putting the collar together was something everybody knew; but when the patentees got their light closely woven interlining and got the right kind of material for coating on both sides thereof and then fastened it in the first fused collar, they had something new that nobody else had had the imagination to hit upon, in a form very easy to manufacture and maintain.

I find, therefore, that this is a case where there was a nicely balanced question of invention with commercial success of a phenomenal kind clinching the right of the patent to be recognized as valid.

VII. I do not feel satisfied that the Rosenberg affair is proved beyond a reasonable doubt to be a prior use that would forestall the plaintiff here. I was not satisfied with the evidence on that. I think that covers the situation on the question of the only prior use which the defendants attempted to prove as much as it needs to be covered herein.

VIII. The main question throughout the trial has been the question of the validity of the patent. I turn now to the question of infringement.

The stipulations of fact as to the defendants' construction show, I find, direct infringement on the part of Dresswell Shirts, Inc., and Beaver Manufacturing Company, Inc.

As to the contributory infringements on the part of the other defendants, the stipulations of fact carried the proofs far enough to make a prima facie case and required the defendants to go on with the evidence in order to make out, if they could, that they did not intend that the interlinings, whether cut or not, which they sold should be used in making collars which infringed the plaintiffs' patent.

■ IX. This opinion must stand as the findings of fact and conclusions of law in this cause under Equity Rule 70½, 28 United States Code Annotated, following section 723; Hazeltine Corporation v. Radio Corporation (D.C.) 52 F.(2d) 504, 512; Lewys v. O'Neill (D.C.) 49 F.(2d) 603, 618; Briggs v. United States, 45 F.(2d) 479 (C. C.A. 6); Stelos Company v. Hosiery Motor-Mend Corporation (D.C.) 60 F.(2d) 1009, 1013; Id., 72 F.(2d) 405 (C.C.A. 2); Id., 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414; cf. also The El Sol (D.C.) 45 F.(2d) 852, 856, 857; Southern Pac. Co. v. U. S., 72 F.(2d) 212 (C.C.A. 2), and an order so providing must be included in the interlocutory decree.

X. The plaintiffs may have an interlocutory decree with costs, carrying the usual permanent injunction and providing for a reference to a special master, with the usual powers, through whom the defendants each must make a true accounting to the plaintiffs of the number of fused collars, cut coated collar interlinings and yardage of coated interlining sold or made by each of them respectively and of the profits therefrom to them severally accruing, and who must report to the court with all convenient speed the amount of the said profits which the defendants have each made by reason of their respective infringement, direct or contributory, of the plaintiffs' patent.

The interlocutory decree, which may be settled on three days' notice, must be accompanied, on its submission to the clerk, with a copy of the disclaimer certified by the United States Patent Office.